Adeline K. Hathaway v. Jacob Mitchell and another.

*Equity jurisprudence: Mill-dams: Abatement: Right of flowage: Purposes.*
A court of equity will not interfere to protect complainant from an
injury that defendants can at any time make lawful if they choose;
therefore a showing of a subsisting right of flowage for saw-mill or grist
mill purposes will prevent the abatement of a mill-dam erected to sup-
ply a paper mill and causing only the like extent of flowage.

*Mill dams: Grants of right of flowage: Quantity: Use.* A grant conveying
the right to keep up a mill-dam at a specified height, and imposing no
restrictions on the use, cannot be confined to the use then presently
contemplated.

*Right of flowage: Grant in fee: Restrictions: Construction.* While it is
competent for grantors to limit the right of flowage to particular pur-
poses, a grant in fee simple, as a general rule, cannot be restricted ex-
cept by plain conditions.

*Grant of right of flowage: Quantity: Change of use.* The grant in question
in this case is held to be in legal effect a grant of a certain quantity of
water power, and the fact that it was to be immediately used for par-
ticular ends is not inconsistent with a change of uses, where no change
is forbidden.

*Heard April 19.     Decided June 6.*

Appeal in Chancery from Lenawee Circuit.

*Greenly & Stearns* and *A. L. Millard,* for complainant,
argued that the grants to Avery and to Goulding & Morse
are both by their express terms limited to the use of the
flouring mill then on the premises, and confer no right
to use the water for another and different purpose; that
when the words used will admit of one construction which
would limit the use to a particular purpose, and another
which would allow the use specified to be merely a meas-
ure of the quantity to be used, the courts incline to the
latter construction as being most favorable to the grantee,
but this rule has no influence where the intention of the
parties is clearly expressed in the written agreement:
*Angell on Water Courses (6th ed.),* § *149 and note 3;
Deshon v. Porter, 38 Me., 289; Tourtellot v. Phelps,
4 Gray, 374; Ashley v. Pease, 18 Pick., 268; Big-
elow v. Battle, 15 Mass., 313; Rogers v. Bancroft, 20
Vt., 250; Johnson v. Rand, 6 N. H., 22; Strong v.*

*Benedict,* 5 *Conn.,* 210; *Garland v. Hodgson,* 46 *Me.,* 511; and that in giving construction to such grants, the situation of the parties, the subject matter of their transaction, the surrounding circumstances, and the whole language of their instrument, should be considered : *Sumner v. Williams,* 8 *Mass.,* 162; 2 *Parsons on Cont.,* 11; *Deshon v. Porter, supra ; Angell on Water Courses,* § 148; *Kennedy v. Scovil,* 12 *Conn.,* 317; *S. F. M. Co. v. Portsmouth Co.,* 46 *N. H.,* 249; *S. N. Co. v. Moore,* 2 *Whart.,* 477; that a court of equity has jurisdiction in cases like this (being a private nuisance), and may not only restrain a threatened injury by injunction, but may remove or abate when the nuisance has been erected : *Angell on Water Courses,* § 444, *et seq. ; Bemis v. Upham,* 13 *Pick.,* 169; *Bardwell v. Ames;* 22 *Ib.,* 333; *Van Bergon v. Van Bergon,* 2 *J. C. R.,* 272; 1 *Green (N. J.) Ch.,* 57; *State v. Mayor of Mobile,* 5 *Porter (Ala.),* 279; and that complainant should not be required first to establish her right at law unless it be doubtful : *White v. Forbes, Walk. Ch.,* 112; 2 *Story Eq. Jur.,* §§ 927–9.

*Stacy & Underwood,* for defendants, argued that it is necessary to the existence of an easement that there be both a dominant and a servient estate : *Dark v. Johnston,* 55 *Penn. St.,* 164; 2 *Wash. R. P.,* 25, § 4 *and cases cited; Wolfe v. Frost,* 4 *Sandf. Ch.,* 71; *Grant v. Chase,* 17 *Mass.,* 443; *Seymour v. Lewis,* 13 *N. J.,* 450; and the recitals in the deed to Avery show that the Palmyra mill property was the property to which the easement granted was intended to be appurtenant; that courts will so construe a deed as, if possible, to give it effect, and will construe it most favorably to the grantee : *Jackson v. Hudson,* 3 *Johns.,* 375; *Jackson v. Gardner,* 8 *Johns.,* 394; *Collins v. Lavelle,* 44 *Vt.,* 230; *Rogers v. Bancroft,* 20 *Vt.,* 250; that the Avery deed was a grant of a right to flow the lands of complainant

by means of a dam upon the Palmyra mill property, and there bring no restriction as to locality, it might be built anywhere in the river adjacent to the mill property, and accompanying such right would be the privilege at all reasonable times to enter upon the lands of the grantor to build, rebuild or repair the dam: *Ang. on Water Courses*, §§ *158, 358; Pomfret v. Rycroft, 1 Saund., 323; Hodgson v. Field, 7 East, 622; Frailey v. Waters, 7 Barr., 221;* that the right or easement acquired by such deed would and did pass with the dominant estate to and vest in the defendants by virtue of the mesne conveyances: *Underwood v. Carney, 1 Cush., 255; Karmuller v. Katz, 18 Ia., 352; Neaderhauser v. State, 28 Ind., 257; Rockley v. Sprague, 17 Me., 281; Morse v. Hutchinson, 9 Vt., 242; Pickering v. Staples, 5 S. & R., 107; Woolen Factory v. Batchelder, 3 N. H., 190; Philbrick v. Ewing, 97 Mass., 133;* that the language used in the limitation in the deeds in question here, contemplates a restriction in quantity rather than in the use: see *Kales v. Braman, 49 Me., 207; Ashley v. Pease, 18 Pick., 268; Bigelow v. Battle, 15 Mass., 312; Jewett v. Jewett, 16 Barb., 150; Cromwell v. Selden, 3 N. Y., 253; Pratt v. Lamson, 2 Allen, 275; Borst v. Empire, 5 N. Y., 33; Garland v. Hodgson, 46 Me., 511;* that while equity will frequently interfere to restrain the threatened erection of a dam, it is loath to determine a disputed right and destroy a dam already erected: *Coe v. Lake Co., 37 N. H., 254; Burnham v. Kempton, 44 N. H., 78; Reid v. Gifford, 6 Johns. Ch., 19; Van Bergon v. Van Bergon, 3 Johns. Ch., 282;* that upon complainant's construction of the grants in question defendants are entitled to maintain their dam, but may be restricted in the use to which they may put the water, and the case made by the bill therefore does not warrant the relief prayed, see *Jones v. Wells, 31 Mich., 170.*

HATHAWAY v. MITCHELL.

CAMPBELL, J:

Complainant, who is a riparian owner of land on the River Raisin, filed her bill to abate a mill-dam erected by defendants to supply their paper mill further down the river. The mischief complained of is, that her land is overflowed, and that the stream is so diverted that so much of her land as lies below the dam (which is at an ox-bow), is deprived of the natural fence it derived from the stream in its primary condition.

In 1849, at the lower point of the bend, and below complainant's land (then owned by her husband), a saw-mill stood on the left bank, belonging to one Spalding, and a flouring mill on the right bank, nearly opposite, belonging to John S. Avery. Both mills were supplied from one dam near the saw-mill. A controversy having arisen concerning the right of flowage, George A. Hathaway and complainant, his wife, on the 8th of November, 1849, made a deed to John S. Avery, reciting their ownership on the opposite sides of the river, and Avery's owning premises "formerly called the Palmyra mill property," and proceeding as follows: "And whereas, the said John S. Avery is desirous of acquiring the undisputed right to use the water in said stream, and to flow the lands in and near the same, so far as may be necessary for the purpose of furnishing a full supply of water for the profitable use of his flouring mills erected on the property first above mentioned: Now, therefore, we, the said George A. Hathaway and Adeline K., his wife, in consideration of one hundred and fifty dollars to us in hand paid by the said John S. Avery, the receipt whereof is hereby acknowledged, have granted, bargained, sold, released, and confirmed, and by these presents do grant, bargain, sell and confirm, unto the said John S. Avery, his heirs, executors, administrators and assigns, all the water of said stream which may or can be used as aforesaid, and also the unlimited right to flow the lands aforesaid, or any part thereof, in or near said stream, as far as may be necessary for the purpose

aforesaid." [Then follows a release of previous damages.] "To have and to hold the said easement and privilege to the said party of the second part, his heirs and assigns forever, as appurtenances belonging to his and their lands as aforesaid." There was a clause providing that the release should not enure to Spalding's benefit for his saw-mill.

On the 2d of December, 1850, Hathaway gave to Spalding a release of all damages to which the maker then was or might thereafter be entitled, occasioned by the keeping up by said Spalding of the mill-dam at Palmyra at the same height at which it had been raised theretofore at any time.

In 1864, the dam having been partly destroyed by water, the then owner of the Palmyra mill obtained leave from Hathaway to put a temporary dam across the river higher up, and where it would abut at one end on complainant's property. On the 11th of February, 1869, Hathaway and wife conveyed to Burr Goulding and Asa W. Morse, then owning the premises, "the right to. use the land lying adjacent to and upon the River Raisin, on sections fifteen and twenty-two, in township seven south, of range four east, at the place and below where the dam of the Palmyra mills is now located, for the purpose of attaching or affixing a dam for said mills, including the dam now in use and the flowage caused or to be caused thereby. Also the right to at all times enter upon said lands, for the purpose of building, rebuilding or repairing said dam or dams."

In 1871 this dam was partly carried away, and as the mills were burned in 1870, there was nothing done to renew or repair the work until, just before the bill was filed in 1874, the dam was rebuilt to supply a paper mill built by defendants, who have succeeded to the saw-mill and other mill property formerly served by the water power.

The complainant claims that the easement, whatever it was, was confined to a flouring mill, and is extinguished.

The evidence shows that the damage done to complainant is no more than would have been done by either of the old dams.

There is nothing in the case to show any extinguishment of the saw-mill right of flowage, which is now vested in defendants, and whether confined to a saw-mill or not, it certainly would justify the maintenance of a dam for that purpose whenever defendants should see fit to build one. This being so, a court of equity will not interfere to protect complainant from an injury that defendants can at any time make lawful if they choose. But we think, so far as this record shows, the right cannot be thus restricted. It gave Spalding the right of keeping up the mill-dam at its former height, and imposed no restrictions on its use.

But we also think the grant to Goulding & Morse is equally unrestricted. It was to be for the Palmyra mills. The original grant to Avery, although it had given no express right of abuttal on complainant's grounds, and although it was for the purpose of furnishing a full supply of water for the profitable use of his flouring mills, did not in words restrict the use of the water to any particular purpose. It was a grant of all the water which "may or can be used as aforesaid," and a right to flow "so far as may be necessary for the purpose aforesaid." But it was made expressly a grant in fee simple as an appurtenance belonging to the lands of the parties to the conveyance.

It is no doubt competent for grantors to limit the right of flowage to particular purposes. But it is a general rule that a grant of an estate in fee simple cannot be restricted except by plain conditions. It does not appear from these deeds, or from any other source, that the parties had any occasion or desire to limit the use of the water power to any specific purpose. The grantors reserved no use for themselves, but gave the grantees all the power created by the dam. Inasmuch as the grantors were farther up the stream than the grantees, it did not concern them what became of the water after reaching the mills, and a use for one purpose was of no more importance to them intrinsically than a use for another. The grant, taken together, is expressly a grant of a certain quantity of water power, and the fact

that it was to be immediately used for particular ends is not inconsistent with a change of uses, where no change is forbidden. In *Mandeville v. Comstock, 9 Mich. R., 536,* the grant was of a certain number of square inches under a certain head and fall, to be used for "the purposes only of a cabinet shop and the business connected therewith, and also furnace operations." There the restriction was plainly expressed, and yet even there, the doubt as to a subsequent removal of the restriction was held sufficient to exclude relief in equity. The present case can only be sustained by assuming that a restriction was meant, which is inconsistent with a fee simple, and only to be inferred from language which at best is very ambiguous. We think, on the whole, that no such restriction can be deduced from the conveyances.

There is therefore no ground for equitable interference, as there would be none if the construction were different, inasmuch as the right would still exist to flow the lands for saw-mill and grist-mill purposes.

The bill was rightly dismissed, and the decree must be affirmed with costs.

The other Justices concurred.