STEPHEN TUTTLE v. LYMAN TUTTLE.

*Cancellation of mortgage.*

A son agreed to support his father and family, and the father conveyed his farm to him. About five years afterwards the son conveyed the farm to his brother, who gave him a mortgage on it for some stock and for expenditures on the land. The grantee immediately conveyed the land to the father, who knew of the mortgage and did not complain of it. But three years later he filed a bill asking that it be cancelled as fraudulent against himself. *Held* that the bill could not be sustained on this showing.

Appeal from Lapeer. Submitted June 10. Decided June 17.

BILL TO CANCEL MORTGAGE. Defendant appeals.

*S. U. & C. P. Thomas* for complainant.

*Geer & Williams* for defendant. A party to a business arrangement cannot ratify so much as benefits him and disaffirm what he deems injurious to him, *Street v. Dow,* Har. Ch., 428: a party seeking to rescind a contract must act promptly, *De Armand v. Phillips,* Walk. Ch., 186, 198-9; *Disbrow v. Jones,* Har. Ch., 104; *Trues-*

*dail v. Ward,* 24 Mich., 134; *Ford v. Loomis,* 33 Mich., 121.

CAMPBELL, C. J. The bill in this case was filed to · set aside a mortgage as against the rights of complainant. The facts, which are not seriously controverted, show that on May 23, 1868, when complainant, according to his averments, was not far from fifty-five years old, and under no disability of mind or freedom of action, he conveyed a farm of forty acres, where he had lived, to his son Lyman Tuttle. There is no evidence that this was done upon any urgency of the grantee. At this time complainant had a wife living, who joined in the conveyance, and some grown up and two minor children, a boy and a girl, both young. Defendant had some months before, if the dates of the various papers in the record are correct, made an agreement to support his father and family; the boy to go to school until he had a good education, and the girl as much as would be convenient. The parties were in very moderate circumstances and the land worth about $600.

The family arrangements do not seem to have been much changed. Defendant, after his conveyance to his brother hereafter mentioned, was absent for some time, but the father remained on the place, and the children were educated about as usual in such circumstances. We do not see any special reason for complaint, and none seems to have been made for a long time, if at all.

In February, 1873, defendant conveyed the land by warranty deed to his brother, Edwin Tuttle, who gave him back a mortgage for $600, the terms of payment of which do not appear in it except by reference to a note not in proof. The bill does not explain them. Almost immediately thereafter Edwin Tuttle conveyed the land to complainant. The evidence, so far as there is any, bearing on the consideration of this mortgage, indicates that it was intended to compensate defendant for some stock sold to Edwin, and for expenditures and improve-

ments made on the land. It was unquestionably known to complainant when he took back title from Edwin.

On the seventh of January, 1876, nearly three years thereafter, complainant, having made no previous complaint or objection in any distinct form, if at all, filed this bill, claiming the mortgage to be fraudulent against him, and asking its rescission. Edwin had in the meantime died.

We cannot see on what ground any such complaint is based. So far as the title of complainant is concerned, he certainly took it burdened with the mortgage. He does not complain of the conveyance to Edwin, but sets it up as his own source of title. As against Edwin the mortgage was plainly valid. Complainant has not been ignorant of any of the transactions, and has not been unable for any reason to understand his position. No one has attempted to impose on him, or to prevent him from vindicating his rights. The bill itself is the first sign of dissatisfaction which is shown by any weight of proof. The children have grown up and are able to care for themselves. The personal grounds of complaint are not obvious. We cannot see from the record any substantial grievance, and we cannot see any ground whatever for assailing this mortgage. If there was any wrong done, none was proved, and it is not easy to comprehend the complainant's theory of complaint.

We think the court erred in setting aside the mortgage. The decree must be reversed and the bill dismissed with costs of both courts.

The other Justices concurred.