The Toledo, Ann Arbor & North Michigan Railway Company v. The Detroit, Lansing & Northern Railroad Company, John B. Mulliken, Thomas M. Fish, and John Doyle.

[See 61 Mich. 9; 62 Id. 564, 578.]

*Railroad companies—Manner of making crossing—Equity—Injunction—Affirmative relief under cross-bill.*

1. A railway company, having condemned a right of way over another railroad for crossing purposes (which proceeding was afterwards held void), proceeded clandestinely to effect such crossing, and then filed a bill to enjoin the *second* company from interfering with said crossing.

   *Held*, that the statute (Laws of 1883, Act No. 174, p. 187, § 36) contemplates that such a crossing shall be made *over* or *under* the *existing* road, if possible, but does not contemplate or authorize the road making the crossing, even where the condemnation is regular, to use its own discretion in making it, or to disturb the existing road, or change its grade, but harmonious action by *both* roads, or action under the supervision of the State board.

2. In this case the Court dismissed the bill, and retained jurisdiction to grant affirmative relief to defendant under its answer and cross-bill, for the details of which see opinion.

Appeal from Livingston. (Newton, J.) Argued October 28 and 29, 1886. Decided November 17, 1886.

Bill filed to enjoin interference with railway crossing. Defendants appeal. Bill dismissed, and affirmative relief

granted defendant company under its answer and cross-bill. The facts are stated in the opinion.

*Luke S. Montague,* for complainant.

*Charles B. Lothrop,* for defendants.

CAMPBELL, C. J. This bill was filed January 6, 1886, to prevent the defendant railroad from interfering with a crossing which complainant had just made under defendant's road near Howell, in Livingston county. The alleged ground of complaint was that complainant had procured a condemnation of the right of way, and had obtained peaceable possession, and that complainant's road was in full operation, and that defendant threatened to fill up the cut, and thus prevent further use of it.

The defense was, in substance, that there had been no valid condemnation, and no compliance with the law respecting such crossing; that complainant had, on Saturday night, January 2, by fraudulently obtaining an illegal injunction, and by force and violence, aided by color of it, taken possession of defendant's road at the proposed crossing, and hindered its further use during the construction, and made the crossing by cutting through an embankment, and putting in a bridge, which raised the grade of defendant's road so as to make the passage inconvenient, and more or less dangerous.

The answer asked the benefit of a cross-bill, and of an injunction against complainant's further occupancy.

On final hearing the court sustained complainant's case, and perpetuated the injunction granted in the outset.

The case made out is clearly with the defendants. It appears that condemnation proceedings were taken in the probate court, on which an order of confirmation was made December 18, 1885, which were at once appealed to this Court, and set aside as illegal throughout.[1] Among other

[1] See *Toledo, Ann Arbor & N. M. Ry. Co. v. D., L. & N. R. R. Co.,* 62 Mich. 564, 578.

radical defects it did not appear that any attempt had been made to come to an amicable agreement concerning the crossing, and it did not properly describe what was sought to be appropriated, or what sort of crossing was contemplated, and no attempt was made to get the determination of the State board as to the proper method of crossing. Complainant, without any legal excuse whatever, determined for itself, without conference and without the action of the board, the whole matter of crossing, and built it in its own way.

After getting the condemnation, no notice whatever was given to defendant to see whether they could not agree as to the manner of making the crossing, or, if not, to have the board decide it. The complainant clandestinely made preparations to push the work through on Saturday night, January 2, 1886; and, in order to prevent interruption, got out from a circuit court commissioner an injunction, which was, as we have held, an absolute nullity,[1] and went through the form of sending a notice by telegram, of a peremptory and uncivil character, to some of the defendant's officers, which did not reach them, and was apparently not meant to reach them, in time to interfere. Upon their reaching the place late in the evening they were stopped by a show of armed force, the injunction was served, and the work proceeded, and the defendant's road was broken up, and business hindered, till the crossing and bridge were made. There is some claim made that complainant did not threaten or use force, but this is abundantly shown to have been done, under circumstances which should not have been overlooked by the criminal authorities. After the work was done, defendants proposed to fill up the gap, and restore the track to its proper level, but were prevented by the injunction issued *ex parte* by the circuit court commissioner under this bill, which the circuit court refused to dissolve, and kept in force.

---

[1] See *Toledo, Ann Arbor & N. M. Ry. Co. v. D., L. & N. R. R. Co.*, 61 Mich. 9.

The case presents one of the most aggravated wrongs that we have had brought to our notice. It is impossible to hold that this invasion of defendant's premises was made in good faith, or with any supposition that there had been such a compliance with law as to authorize what was done. The statute contemplates that the crossing shall be made over or under the existing road, if possible; but it does not contemplate or authorize the road making the crossing, even where the condemnation is regular, to use its own discretion in making it, or to disturb the old road, or change its grade. It contemplates harmonious action by both roads, or action under the supervision of the State board.[1]

The crossing, made as it was, had no element of lawful right, but was a violent and lawless trespass; and, if defendant had succeeded in filling up the crossing without a breach of the peace on its own part, it would have been legally justified. It cannot be said that complainant was in peaceable possession at that time. It has never been, in any proper sense, a possession in good faith; and complainant had no possible ground for filing a bill.

But when the answer was filed, serving the purpose of a cross-bill, while defendants had an equitable right, an injunction on their own behalf, to prevent any further action which was not adequately remedial at law or by private redress, it is questionable whether there was any occasion for further affirmative equitable relief than was necessary to stop the use of the crossing, and enable defendant to put its own track in as good condition as before. And, as the case now stands, while we deem it our duty to see that defendant is placed in proper condition, we cannot shut our eyes to the fact that complainant's road is now in full operation, and, however wrongfully placed, has been so placed for some time. This is no reason for giving complainant any advantage of its own wrong, but it is a reason for using the preventive jurisdiction

[1] Act No. 174, p. 187, § 36, Laws of 1883.

in defendant's favor, with full protection to defendant, but at the same time without creating further complications, if possible.

Under the statutes there is no doubt that complainant can legally secure a crossing by pursuing just and legal methods, and that the crossing ought to be under defendant's road. There is as little doubt that it is not and cannot be made lawful to make this crossing so as to prejudice defendant's road, by making it unsafe or inconvenient. If complainant had entered peaceably, and got into full and complete use of the crossing, the fact that it could be lawfully secured by agreement or condemnation would generally render an injunction against continuance of doubtful propriety, except so far as defendant's own road had been injured or imperiled. *Mercer v. Williams*, Walker, Ch. 85; *Hathaway v. Mitchell*, 34 Mich. 164. In the present case we can probably do complete justice by protecting what is imperiled upon such conditions as are equitable.

A large part of the difficulty, and much of the damage incurred, may be fairly traced to the position in which parties have been placed by this litigation. It is the duty of every court, as far as possible,—and it is generally possible for an equity court,—to undo or remedy such mischief as has come from the use and abuse of its process. It is also desirable, where it can be done without disregard of rules of right, that an end should be put to matters in controversy where the court has assumed jurisdiction. As the Constitution provides for estimating damages, in the exercise of the power of appropriating lands to purposes of utility, by commissioners appointed by courts of record, we see no difficulty in having the whole subject in controversy disposed of here, unless defendant desires a jury or objects; and we shall retain jurisdiction for that purpose. We are therefore to consider just how the parties stand, and therefore what will meet the exigencies of the case.

As complainant made out no equities, its original bill must be dismissed, so far as it involves any relief to complainant, with costs of both courts.

On the other hand, as the defendant corporation is entitled to equitable relief against serious injury which is not subject to adequate legal remedy, it has a right to prevent the making of such a crossing as will impair its rights or safety. But it would not generally be considered the duty of a court of equity to go further than this, and enjoin unconditionally what may be legalized. Under our laws, there is no doubt of the power of complainant, by pursuing the proper course, to obtain a crossing which shall not interfere with the track of defendant. The statute also contemplates, as safest for all parties, when practicable, that the crossing shall not be on the same level. The crossing made, if adjusted so as not to raise or disturb defendant's way, is a suitable one, if made safe and convenient. The State has provided a board intended to exercise some oversight in such matters, and presumably able to do so wisely. We shall therefore make a present decree dismissing complainant's original bill, with costs of both courts, and provide as follows for the remaining matters in controversy, providing defendant consents, and as a condition of granting defendant relief affirmatively under the cross-bill:

The gentlemen composing the State board shall be appointed commissioners for all the purposes contemplated by our decree.

The crossing shall be so improved as to restore an unbroken surface grade to defendant's railroad by such lowering and leveling of the bridge as will secure this result, which seems to require about 12 inches. This work shall be done, unless parties agree otherwise, by defendant, but subject to the supervision and approval of the commissioners. If, in the opinion of the commissioners, the abutments or other supports of the surface shall need modifying or strengthening,

so as to make them permanently safe, this shall also be done in the same way; but this work shall be so done in time and manner as not to interfere more than is absolutely necessary, in the opinion of the commissioners, with the running arrangements of either road, and the commissioners shall make direction accordingly. It is understood, however, that the parties may, in any of these details and arrangements, act amicably in concert.

When the crossing is completely adjusted so as to be safe and permanent, and upon the proper surface level on defendant's road, all of which should be done as speedily as convenience will permit, the commissioners shall estimate and report, with their other doings, to this Court, the proper compensation to be paid to defendant corporation by complainant for the making and maintenance of the crossing, which, in accordance with the principles laid down in our previous decisions, will include the value of the land taken, the pecuniary damage which defendants suffered from the interruption of their business, and the increased cost of doing it, caused by the making of the crossing and the transactions which accompanied it, and any ascertainable damages, if any, which will accrue from the expense made necessary by such crossing; and, further, such expense as shall be legitimately incurred by defendant in making the changes contemplated by this decree.

Complainant shall, within 30 days, file with the clerk of this Court a bond, with two sureties, residents of Michigan, to be approved by this Court or one of its Justices, in the penalty of $10,000, conditioned to perform this and any further decree of this Court, and pay any sum which may hereafter be decreed to be paid to the defendant corporation.

Upon the coming in of the commissioners' report such further order or decree will be made as shall be found necessary, and the case will be retained for disposing of the equities reserved. Neither party shall disturb or molest the other,

or interfere, except in harmony with this decree, until further ordered.

We have hesitated about exercising the powers above indicated, as nothing but the peculiar situation of this cause would justify it. We do not think it would be proper to do so under any circumstances less urgent and complicated.

And in making their report, we only expect the commissioners to submit to our judgment such of their doings as are not within their own official jurisdiction, over which we have no revisory power.

The other Justices concurred.*