THE DETROIT, LANSING & NORTHERN RAILROAD COMPANY V. THE PROBATE JUDGE OF THE COUNTY OF LIVINGSTON.

[See 61 Mich. 9; 62 Id. 564; 63 Id. 645.]

*Railroad companies—Condemnation proceedings—Manner of making crossing—Order of occupancy—Jurisdiction of probate court.*

1. A railway company instituted proceedings in the probate court to condemn a crossing through another company's right of way, and, pending an appeal to the Supreme Court, took *forcible* possession, and completed the crossing without the action of the State board created by Act No. 174, § 36, p. 187, Laws of 1883, determining the *manner* and *conditions* of such crossing. The condemnation proceedings were held *void*, and, pending the

decision of the Supreme Court on an appeal in an *equity* suit brought to protect the possession thus taken, the railway company, without leave of the appellate court, filed a *second* petition in the same probate court to condemn the crossing, and obtained an *ex parte* order permitting the petitioner to occupy the crossing during the pendency of such condemnation proceedings; whereupon the railroad company whose track had been thus crossed applied for a *mandamus* to compel the rescission of said order.

*Held,* that such order, if it can be granted at all, must be made on *full* notice and an *adequate* hearing; but—

*Held,* further, that such action, *with* or *without* notice, is not contemplated by the railroad law in the case of railroad crossings.

*Held,* further, that it is a condition precedent to *any* assumption of power to make such a crossing, even *after* condemnation, that the State board, consisting of the Attorney General, Secretary of State, and Commissioner of Railroads, shall *determine* the *manner* and *conditions* of making the crossing.

2. The probate court has no jurisdiction under How. Stat. § 3340, to authorize a railroad company, after an unsuccessful attempt to carry through condemnation proceedings in said court, to continue in possession of the property, and, if not in possession, to take possession and use the same until the final conclusion of the *new* proceedings authorized by said section, and to that end to stay proceedings in *other* courts on filing security, etc.

3. Assuming authority in the probate court to appoint the commissioners or jury of appraisal in condemnation proceedings, it does not follow that such jurisdiction extends to anything to be done *collaterally* or *outside* of the inquest, whereby the power of the court is to be exercised *directly* on the rights of the parties.

4. The *nature* of probate courts was discussed in *Ferris v. Higley,* 20 Wall. 375, where it was held beyond the power of the legislature of Utah to give them common-law and equity jurisdiction. They have existed in Michigan since its complete territorial organization, and their *character* has never been doubtful. They have always been regarded as courts for *peculiar* and *limited* purposes, which are *outside* of ordinary litigation, and incapable of dealing *completely* with ordinary rights.

Mandamus to compel a probate judge to vacate an order made under How. Stat. § 3340, continuing a railway company in possession pending condemnation proceedings, etc.

Submitted November 9, 1886. Granted November 17, 1886. The facts are stated in the opinion.

*Charles B. Lothrop,* for relator.

*L. S. Montague,* for respondent.

CAMPBELL, C. J. The Toledo, Ann Arbor & North Michigan Railway Company, in the year 1885, took measures to condemn a crossing through relator's way, which were conducted in the probate court of Livingston county, resulting in a verdict of nominal damages. These proceedings were removed to this Court, and quashed for various defects and errors, including jurisdictional insufficiency.[1] Pending that appeal, and without the action of the proper State board to determine the manner and conditions of the crossing, the company seeking to get the condemnation took forcible possession and completed a crossing, and equity proceedings were begun in aid of it, which were some time since brought up to this Court by appeal, and submitted for our judgment.[2]

Pending our action, on the twenty-first day of October, 1886, the same company, without leave of this Court, filed a new petition in the same probate court to condemn the crossing, and on the same day that court made an *ex parte* order, permitting the occupancy of the crossing during the pendency of the condemnation proceedings. Relator now asks a *mandamus* to compel the rescission of this occupancy order.

The respondent answers, basing the authority for this action on section 26 of art. 2 of the General Railroad Laws (How. Stat. § 3340[3]), which is claimed to provide that where one unsuccessful effort has been made to carry through condemnation proceedings, and a second application is made for

---

[1] See *Toledo, Ann Arbor & N. M. Ry. Co. v. D., L. & N. R. R. Co.,* 62 Mich. 564.

[2] See *Toledo, Ann Arbor & N. M. Ry. Co. v. D., L. & N. R. R. Co.,* 63 Mich. 645.

[3] Amended by Act No. 8, Laws of 1887.

defect of title, the court may authorize the corporation, if in possession, to continue in possession, and, if not in possession, to take possession and use the property until the final conclusion of the new proceedings. By the same section it is provided that the same court may stay all actions or proceedings against any company or officer or agent, on filing of security, or payment into court of a sufficient sum.

A bond was ordered of $2,000.

There are several fatal objections to the action had in the present case. An order which destroys the possession of the owner of lands, and enables the land to be appropriated and used in such a way that it cannot be restored to its old condition, and cannot be used at all for an indefinite period by the true owner, whose adjoining property must also be usually seriously affected by it, is a very great invasion of private property, and, if it can be granted at all, cannot be granted without full notice and an adequate hearing. The proceedings first had in the present instance were void throughout, and no better than if none had ever been taken. To hold that any court can, by such *ex parte* action, assume and grant control of private property, would render the constitutional safeguards requiring due process of law nugatory.

But such action, with or without notice, is not contemplated by the railroad law in the case of railroad crossings. It is a condition precedent to any assumption of power to make a crossing, even after condemnation, that the State board, consisting of the Attorney General, Secretary of State, and Commissioner of Railroads, shall determine the manner and conditions of making the crossing. Section 36, p. 187, Laws of 1883.

There is, however, a further difficulty in the nature of this court. Assuming the authority, which has existed for some time, and to which no objection has been pointed out, to appoint the commissioners or jury of appraisal, this proceeding is one of a mixed character, involving no strictly judicial

powers in the court itself, which does not, as such, conduct the appraisal. But when anything is to be done collaterally or outside of the inquest, whereby the power of the court is to be exercised directly on the rights of the parties, the question whether the probate court can do this is very different from its participation in merely prerogative action.

The probate court is a court which, although declared a court of record, and having large and important powers, is nevertheless an inferior court, subject to the review of the circuit courts, and not designed or adapted to the exercise of the ordinary judicial power, in dealing with litigated questions affecting persons not subject to the exercise of prerogative jurisdiction, and entirely *sui juris*. The jurisdiction over contentious litigation belongs, under the Constitution, to courts of law and equity. In order to make such authority efficient as is executed by respondent in this case, it is absolutely necessary, and the statute so provides, to restrain the parties whose land is taken from suing in other courts. Such suits must be brought usually in the circuit courts, and may be taken by appellate action into this Court. It is out of the question that an inferior court can stay proceedings in those courts to which the law has made it subordinate. In the present case, to make this probate order effective, that court must be able to lay its hands on the proceedings now pending in this Court, or, previous to the appeal here, to stay action in the Livingston circuit court, or any other court in the State where parties might litigate the trespass committed by the petitioning railroad company.

Such a proposition cannot be maintained. No such jurisdiction can be conferred on a probate court. It is foreign to the constitution of such courts, and subversive of the constitutional distribution of judicial powers. The nature of probate courts was discussed in *Ferris v. Higley*, 20 Wall. 375, where it was held beyond the power of the legislature of Utah to give them common-law and equity jurisdiction.

They have existed in Michigan since its complete territorial organization, and their character has never been doubtful. They have always been regarded as courts for peculiar and limited purposes, which are outside of ordinary litigation, and incapable of dealing completely with ordinary rights.

The order is void, and must be ordered to be set aside. A *mandamus* will issue, with costs against the petitioning company, at whose instance the order was granted.

The other Justices concurred.