## RICHTER *v.* KABAT.

1. CHURCH PROPERTY—POSSESSION—EXCLUSION OF OFFICERS—INJUNCTION.

Injunction is the proper remedy to secure to the officers of a church the peaceable possession of its property as against members of the parish who have assumed to exclude them therefrom without right; the proceeding by ejectment being impracticable in such case.

2. CONTEMPT OF COURT—DUE PROOF—EVASIVE TESTIMONY.

Under 2 How. Stat. § 7259, requiring "due proof" of the facts charged as contempt of court where the alleged misconduct is not committed in the immediate view and presence of the court, one is improperly adjudged guilty of contempt for violation of an injunction, where the case against him rests entirely upon his own testimony, and such testimony, though in some respects evasive, fails, when taken as a whole, to make out the alleged violation.

*Certiorari* to Bay; Maxwell, J. Submitted June 10, 1897. Decided October 25, 1897.

George W. Kabat brings *certiorari* from an order adjudging him guilty of contempt for violation of a preliminary injunction issued in suit by Henry Joseph Richter and others against said George W. Kabat and others. Reversed.

*Van Kleeck & Anneke* (*E. A. Cooley*, of counsel), for appellant.

*McDonell & Hall* (*D. Mangan*, of counsel), for complainants.

MONTGOMERY, J. This is *certiorari* to review an order adjudging defendant Kabat guilty of contempt for disobedience to a preliminary injunction. The original bill was filed by complainant Richter, bishop of the diocese

of Grand Rapids of the Roman Catholic Church, Marian Matkowski, who was the priest in charge of St. Stanislaus parish of Bay City, and the other complainants, who are trustees or committeemen of the parish. The bill alleges title to the church property of St. Stanislaus to be in the bishop; that, under the rules and discipline of the church, the control and possession of the church property is in the resident parochial priest, in conjunction with the board of trustees or church committee appointed by the bishop, over whom the bishop has at all times a supervisory control; that the bishop has at all times the sole power to appoint and place a priest in charge of each parish; that Matkowski had been chosen as priest in charge of the parish in question, and that one Turski had been selected as an assistant priest; and that, in the preceding February, Turski began to exhibit a disposition of discontent, and to circulate an impression among a number of parishioners, including the defendants, that he was not properly treated by Matkowski.

The bill proceeds to charge, in substance, that defendants took sides with Turski; that a committee was appointed to represent the Turski faction; that they called upon Matkowski at his parochial residence, and asked him to quit his residence, and quit his charge as priest of the parish, and threatened, if he did not leave, that a large number of his parishioners would gather together, and forcibly oust him from the premises; that later, in April, they called at the residence of Matkowski, and proceeded to take an inventory of the personal property; that Matkowski left the residence, being in fear of personal violence, and has not since occupied the same; that defendants caused the gates leading into said premises to be fastened with chains and locks, and now assume to have charge of said premises, for the sole purpose of preventing complainant Matkowski from going upon the same, and that a guard was appointed to remain on said premises, and prevent said complainant from going upon the same. The bill further alleges that Matkowski still retains the

key of said church and said parochial residence; that, on the 10th of May preceding the filing of the bill, the bishop went to the church with Matkowski for the purpose of holding the usual morning religious services; that certain of the defendants openly interposed and objected to the said bishop and the said Matkowski entering said church together, or holding service there, and, on account of the said interference of the defendants, the said bishop and said Matkowski were compelled to retire from said church, and were restrained from holding services there on that day, and have been so prevented ever since.

The bill alleges that, although entitled to institute proceedings against defendants for trespass, yet, inasmuch as it would be necessary to bring repeated actions of trespass against defendants, such an action would be inadequate to afford complainants their rights in the property, and that the bill is filed to prevent a multiplicity of suits. The bill further alleges that several of the defendants have threatened and intend to destroy the buildings on the premises in question rather than permit the complainants to occupy the same and continue their possession therein. The bill prays that complainants be allowed to exercise their lawful control and jurisdiction over the premises, undisturbed and unmolested by defendants, and prays an injunction, which injunction was granted, enjoining the defendants from any of the acts following:

"(a) From illegally and unlawfully, and in defiance of the authority of said church, combining and conspiring to supplant and remove the said Matkowski from his position as priest of said church and parish, or in any manner interfering with him in the discharge of his duties as such priest therein.

"(b) From in any manner interfering with said Richter and Matkowski, or either of them, in their right to take and enjoy possession of said church building, parochial residence, or school buildings, situate on and occupying block 22, above described, or any part or portion thereof, or of said premises, and all appurtenances thereto.

"(c) From in any manner, either by force, threats, in-

timidation, menace, or violence, exercising any acts of ownership or possession over or to, or of attempting to exercise any right of control over or to, said church building, parochial residence, or school buildings, situate on said described premises, or any part or parcel thereof, or from securing the gates or entrances to said premises with chains, locks, or fastenings, or from maintaining any guard or watch over said premises, or from interfering with complainants, or either of them, in the right of ingress and egress thereto and therefrom, or in the right of possession thereof.

"(d) From in any manner interfering with said Richter or Matkowski in their right to hold continued possession of said church building and premises, and conduct services, religious or otherwise, connected with the discharge of their several duties as bishop and priest therein, at any and all times, or from in any manner interfering with or interrupting the conduct of such services, or of the school conducted and carried on in connection with such parish.

"(e) From in any manner entering upon said premises, or any part or parcel thereof, at any time, or from offering to do or doing any violence or injury thereto, or despoiling or destroying the same, or the said several buildings situate thereon, or any part thereof, or from in any manner, either by threats, menace, force, solicitation, or persuasion, inducing any other person to commit any trespass thereon, or to offer or to cause any injury thereto.

"(f) From unlawfully gathering or collecting in assemblages, crowds, or groups of persons at, near, or on said premises, or in the streets or alleys adjoining or contiguous thereto, or from holding meetings intended, designed, or purposed to inflame the minds and prejudices of said defendants, and induce them, or any of them, to commit acts of violence against complainants, or any of them, or the said premises and property so described as aforesaid."

This bill was answered by defendants, and some time thereafter Matkowski left the parish, and assumed charge of the parish at Cheboygan, and one Bogacki was appointed by the bishop as priest of the parish, and took possession of the church property, and commenced to minister to the congregation. Shortly after this, the old controversy broke out again. A riotous assembly gathered in front of the parochial residence. A breach of the peace

was committed, and the personal property in the residence was injured, and the building itself damaged. It was for complicity with this offense that respondent was convicted of contempt. Two questions are discussed in the brief of counsel:

1. It is contended that the court was without jurisdiction to issue the injunction which was violated, for the reason that defendants were at the time in actual possession of the premises, and the injunction seeks to divest them, and vest it in complainants. Counsel rely upon *People* v. *Simonson*, 10 Mich. 335; *Tawas, etc., R. Co.* v. *Iosco Circuit Judge*, 44 Mich. 479; *Arnold* v. *Bright*, 41 Mich. 207; *Toledo, etc., R. Co.* v. *Detroit, etc., R. Co.*, 61 Mich. 9,—which cases establish the rule that, as a general proposition, the preliminary proceedings of injunction will not be used for the purpose of turning one in possession out of possession, and turning the possession over to complainant. But we think the issue of the injunction in this case not inconsistent with the ruling in the cases referred to. The bill does not show the defendants in possession of the property referred to, or in any other capacity than as members of the parish of St. Stanislaus. The complainants were really entitled to the management of the church property. As was said by Taft, J., in *Brundage* v. *Deardorf*, 55 Fed. 839:

" The peculiar character of the possession by the church trustees, and of the use by the pastor and congregation, makes it clear that a mere action in ejectment would be quite inadequate as a remedy to secure the complainant trustees, and those whom they represent, the same peculiar possession and use for them. The writ of injunction is well adapted to prevent an unlawful intrusion in the pulpit by the pastor, and an unlawful use by the congregation, against all of whom it would be obviously impracticable to institute proceedings in ejectment."

See, also, 2 Beach, Inj. § 917; *Trustees, etc., of New Elm* v. *Hoessli*, 13 Wis. 348; 1 High, Inj. § 714.

2. It is contended that the record fails to show a violation of the injunction by defendant Kabat. The statute

(section 7259, 2 How. Stat.) provides that, when the misconduct charged was not committed in the presence of the court, "the court shall be satisfied by due proof, by affidavit, of the facts charged, and shall cause a copy of such affidavit to be served on the party accused, a reasonable time to enable him to make his defense, except in cases of disobedience to any rule or order requiring the payment of money, and of disobedience to any subpœna." This practice was not followed in this case. No point is made upon a failure to observe the practice by respondent's counsel, and we need not consider whether the failure to require an affidavit would be fatal to the proceedings; but it is evident that the intention is that the respondent shall have opportunity to meet the charge of contempt. The testimony of Kabat was the main case. From this it appears that a meeting was held immediately before the riot; that respondent was present at this time. Respondent denies that he counseled any destruction of property, or that he voted in favor of the action taken at the meeting, or that he took any part in the riot until he was sent for by the officers to come upon the premises, and aid in protecting property. While there might be room for questioning whether respondent's testimony is not evasive if affirmative acts were shown by other testimony, yet, when the case rests entirely upon statements of respondent, such statements, taken as a whole, should make out the act of contempt. It is not contended that respondent was guilty of contempt in going upon the premises at the solicitation of the officers for the purpose of protecting property. We think the charge of contempt was not made out, and that the order adjudging respondent guilty should be reversed, and respondent discharged.

LONG, C. J., GRANT and MOORE, JJ., concurred. HOOKER, J., did not sit.