[L. A. No. 628.    Department Two. — June 15, 1901.]

SAN ANTONIO WATER COMPANY, Respondent, v. W. J. BODENHAMER and SIERRA WATER AND POWER COMPANY, Appellants.

PRELIMINARY INJUNCTION — CHANGE OF POSSESSION. — As a general rule, courts of equity will not interfere by preliminary injunction to change the possession of property, the title or right of possession of which is in dispute.

ID. — POSSESSION OF DEFENDANT — PLEADING — ABSENCE OF ALLEGA-TION. — In the absence of all allegations on the subject of the possession of real estate in controversy, the case on the complaint is the same as though it affirmatively appeared that the defendants are in possession.

ID. — PUMPING FROM WELL UPON LOT — IMPROVIDENT INJUNCTION EX PARTE. — An *ex parte* injunction to prevent the defendant from interfering with the alleged right of plaintiff to pump water from a well upon a specified lot of land is improvidently granted, where the complaint alleges nothing about the possession of the lot of land, and states no contract between the parties, and no facts explaining the nature of the alleged right.

ID. — RESTRAINING VIOLATION OF CONTRACT RIGHTS — CHANGE OF POS-SESSION — EXCEPTION TO GENERAL RULE. — The general rule against non-interference with the possession of the defendant by a preliminary injunction does not necessarily apply, where it appears that the parties are carrying on a common enterprise under a contract

specifically determining their mutual rights. The court may, in proper cases, interfere by preliminary injunction to restrain the violation of contracts, when necessary to protect the legal right and prevent irreparable mischief; and this, in some cases, may involve a change of actual possession.

Id.— Motion to Dissolve Injunction — Answer — Affidavits — Contract Rights. — Where, instead of appealing directly from the *ex parte* order granting the preliminary injunction upon an insufficient complaint, a motion was made to dissolve the injunction after answer and affidavits filed, the correctness of the order refusing to dissolve it is not to be determined from the complaint alone, but also from the answer and affidavits; and where these show a common enterprise, carried on by the parties under a contract defining their rights, it must be inquired whether the case is such as removes it from the general rule against interference with the possession of the defendants.

Id. — Title to Lot — Contract to Develop Water — Rightful Possession of Defendants. — Where it appears that the lot was in fact the property of the defendant corporation, and that plaintiff's only interest therein was under a contract for the development of water thereon, to be divided equally between the parties when the development was completed, and that the defendants were rightfully in possession of the entire lot, including the well in controversy, under the terms of the contract, and were carrying on the work of development with reasonable diligence and dispatch, it was error to refuse to dissolve a preliminary injunction which interferes with the possession of the defendants.

APPEAL from an order of the Superior Court of San Bernardino County refusing to dissolve an injunction. Frank F. Oster, Judge.

The facts are stated in the opinion.

E. R. Annable, for Appellants.

Otis & Gregg, for Respondent.

SMITH, C.— Appeal from an order refusing to dissolve an injunction. The plaintiff is a corporation formed for the purpose of supplying the owners of land in the Ontario Colony tract with water, and in fact supplies with water for domestic use, some two thousand five hundred people, and with water for irrigation, some six thousand acres of land, planted in fruit trees and vineyard, and dependent for water on the plaintiff. The defendant Bodenhamer was the predecessor in title and interest of the defendant corporation, and is now a contractor and agent of the latter. These parties, for a period of some-

thing over four years, have been operating for the development of water on land north of and above the lands of the plaintiff, under the contract and modifications thereof referred to in the answer and affidavits as contracts Nos. 1, 2, 3, and 4,—the first, of date October 19, 1894, between the plaintiff and the defendant Bodenhamer and one Oakley; the others, of date, respectively, May 2, 1895, June 15, 1896, and May 14, 1898, between the plaintiff and the defendant corporation. The business thus carried on is referred to in some of the contracts as the "Bodenhamer Development," and it will be convenient to make use of this expression. The general effect of these contracts was, that the defendants—that is to say, first, Bodenhamer and Oakley, and afterwards their assignee, the defendant corporation—were to do the work of development, the plaintiff supplying the means, and that the water developed was to be divided between the parties according to the terms agreed upon; which were, that the plaintiff was to take all the water—at the valuation agreed on—until reimbursed for its outlay, and the balance to be divided equally between the parties. The property affected by the injunction, and described in the complaint, was acquired and has been continuously used in connection with the work of development, and may be described as appurtenant or belonging to the business. When the suit was brought, it was in the possession of the defendants, who claimed to be using it under and in pursuance of the terms of the contract.

The allegations of the complaint material to be considered are, "that plaintiff is, and for several years last past has been, the owner of the right to pump water from that certain shaft or well situate upon lot 15 of the Cañon Ridge tract," etc., "commonly known as the 'Twenty-first Street well,'" and "now has, and for several years last past has had, an engine and machinery, adapted for and used in pumping water, situate at the mouth of said well or shaft, and upon the lot hereinbefore mentioned"; and that defendants have wrongfully and by force prevented, and threaten to continue to prevent, the plaintiff from pumping water from said well, etc. The injunction was issued on the complaint, without notice to the defendants. The motion to dissolve was made on the answer, which sets out at length the several contracts, and on affidavits. Counter-affidavits were filed by the plaintiff.

There is no allegation in the complaint that the plaintiff is,

or that the defendants are not, in possession of the property in question; nor is there any reference to the contract between the parties, or other allegations explaining the nature of plaintiff's alleged right, or the *status* of the defendants with reference to the property affected by the suit, or regarding the possession of the property; and it is claimed by the appellants that the actual allegations "are pregnant with admission that defendants are in the actual possession of both under claim of right," and that this was in fact the case.   The injunction, therefore, it is claimed, operated, in effect, "as a writ of restitution . . . against a defendant in possession," and was improvidently issued.   This contention, we think, must be allowed.   For, in the absence of all allegations on the subject, the case on the complaint is the same as though it affirmatively appeared that the defendants were in possession; and, "as a general rule, courts of equity will not interfere by preliminary injunctions to change the possession of real property, the title being in dispute"; nor is it a proper remedy for recovering possession of personal property.   (1 High on Injunctions, sec. 355; *Williams* v. *Long*, 129 Cal. 229; *Arnold* v. *Bright*, 41 Mich. 207, 211; *Toledo etc. Ry. Co.* v. *Detroit etc. R. R. Co.*, 61 Mich. 9.)

"The court of chancery," it is said in *Arnold* v. *Bright*, 41 Mich. 211, "has no more power than any other to condemn a man unheard, and to dispossess him of property *prima facie* his, and hand over its enjoyment to another on an *ex parte* claim to it."   And in *Toledo etc. Ry. Co.* v. *Detroit etc. R. R. Co.*, 61 Mich. 9, it is said: "It needs no discussion to show that an injunction against a party's holding his own possession is the same thing as turning him out of possession, and is utterly illegal before final decree. . . . A court of equity cannot change the possession of lands in conflict from one party to another until the merits have been finally passed upon."   (See also numerous decisions cited in the latter case, and *Toledo etc. Ry. Co.* v. *Detroit etc. R. R. Co.*, 63 Mich. 647, and *Richter* v. *Kabat*, 114 Mich. 579, where the rule is affirmed.)   The order granting an injunction, therefore, had an appeal been taken, would probably have been reversed.

But the appeal now is from the order refusing to dissolve the injunction; and whether this be erroneous or not is to be determined, not from the complaint alone, but from the answer and the affidavits also; and from these it appears that the parties have been carrying on together a common enter-

prise, under a contract specifically determining their mutual rights. To such cases the rule invoked by the appellants does not necessarily apply. For the court may, in proper cases, interfere " by way of interlocutory injunction to restrain the violation of contracts," when necessary for the protection of the legal right and the prevention of irreparable mischief, and this, in some cases, may involve a change of the actual possession. (2 High on Injunctions, sec. 1106.) It remains, therefore, to inquire whether there is anything in the case as now presented to remove it from the operation of the rule.

In considering this question it is to be observed that there is no allegation in the complaint as to the ownership or possession of lot 15 of the Cañon Ridge tract, the *locus in quo.* This lot — though it was otherwise supposed by the court — was in fact the property of the defendant, and the plaintiff had no interest in it, except such as he derived under the contracts between him and the defendants, to be used in connection with the "Bodenhamer Development." With regard to the pump and machinery, there is an allegation of ownership, but this, it appears, was purchased under the provisions of the first contract, to be used by the defendant Bodenhamer and his successors in the proposed operations. It is to be regarded, therefore, as belonging to the "Bodenhamer Development," and as subject to the contract. The right asserted in the complaint—to pump water, etc.—is to be understood, therefore, as derived from and resting upon the contract, and is to be determined exclusively by its provisions.

These are very extensively discussed in the briefs, but, under the view we take of the case, it will be unnecessary to enter on so extended an investigation. Under the third contract, of date June 15, 1896, the plaintiff was given the right to prosecute the work; but it was provided that on its failure to avail itself of the privilege, or on its cessation of work for sixty days, the defendant corporation might elect to take up the work, and after ten days' notice proceed therewith, in which case it was to have "the use of all tools, machinery, and appliances already purchased for the prosecution of the work." Under these provisions the plaintiff took up the work, but abandoned it on or about September 1, 1896. The defendant corporation then, after due notice, took up the work; and thereupon—it is alleged in the answer, and not denied—the plaintiff "surrendered to it possession of all the works, of said tunnels, wells, shafts, and

developments, together with the tools, machinery, appliances of every name and nature, which had been purchased for the prosecution of the work of development, and from that time to the commencement of this suit, and until served with the writ of injunction issued by this court herein, it has been, by itself, and W. J. Bodenhamer as its contractor, in possession thereof, carrying on the work of such development with all reasonable diligence and dispatch."

On these facts we cannot perceive in the case any grounds for an injunction, and we are therefore of the opinion that the case comes within the application of the rule invoked and the authorities cited by the appellant's counsel.  What the rights of the parties may be on the completion or other termination of the contract is immaterial to the questions presented on this appeal, which must be determined by the provisions of the existing contract.  Nor can we consider the question whether the use of the well and pumping machinery was necessary to the work of development.  It is sufficient that the defendant was in possession, under the terms of the contract, for the purpose of the development, and asserting, in good faith, the right to the possession of them as necessary for that purpose.

We advise that the order appealed from be reversed.

Gray, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the order appealed from is reversed.

McFarland J., Temple, J., Henshaw, J.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank.