Filed 1/30/26 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| SANTA CLARA VALLEY WATER DISTRICT,<br><br>　　Plaintiff and Respondent,<br><br>　　　v.<br><br>REBECCA EISENBERG,<br><br>　　Defendant and Appellant. | H052913<br>(Santa Clara County<br>Super. Ct. No. 24CV436448)<br><br>ORDER MODIFYING OPINION<br>[NO CHANGE IN JUDGMENT] |

BY THE COURT:

The court orders the opinion filed December 31, 2025, be modified as follows:

On page 5, third full paragraph, third sentence, strike "County" and replace with "Board."

On page 5, third full paragraph, fourth sentence, strike "County" and replace with "Board."

On page 34, footnote 16, first sentence, strike "-client" and replace with "work product."

There is no change in the judgment.

_____
WILSON, J.


WE CONCUR:




_____
GROVER, Acting P. J.




_____
KULKARNI, J.*




*Santa Clara Valley Water District v. Eisenberg*
**H052913**

---

\* Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6 of the California Constitution.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| SANTA CLARA VALLEY WATER DISTRICT,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>REBECCA EISENBERG,<br><br>    Defendant and Appellant. | H052913<br>(Santa Clara County<br>Super. Ct. No. 24CV436448) |

In January 2024, appellant Rebecca Eisenberg, one of seven directors of respondent Santa Clara Valley Water District (Water District), was given access to review at its facility two printed investigation reports (Confidential Reports or Reports). They had been prepared by a law firm at Water District's request. The Reports related to separate investigations of complaints by Water District staff of alleged misconduct by Eisenberg, and of a complaint by Eisenberg of alleged misconduct by her complainants. Shortly after commencing that review, Eisenberg—allegedly without Water District's permission—removed the Confidential Reports from the facility. After Eisenberg failed to return the Reports in response to the Board's request, and after she was censured by Water District's board of directors (Board), Water District filed this lawsuit against Eisenberg alleging a cause of action for conversion and other claims.

After filing this action, Water District filed an application for writ of possession (writ application) seeking Eisenberg's return of the Confidential Reports by prejudgment

order. The writ application was brought under the claim and delivery law, Code of Civil Procedure section 511.010 et seq.[1] The trial court granted the writ application, issuing a writ of possession and a turnover order. In lieu of complying with the turnover order, Eisenberg posted an undertaking as provided by section 515.020, subdivision (a).

Water District then filed a motion for preliminary injunction seeking to compel Eisenberg to return the Confidential Reports to the District. After a hearing, the trial court granted the motion. A formal order granting a mandatory injunction compelling Eisenberg to return the Reports to Water District was filed on January 15, 2025. This appeal by Eisenberg followed.

Eisenberg challenges the preliminary injunction on several grounds. She contends that its issuance constituted error as a matter of law. She asserts that because Water District had obtained a writ of possession and turnover order, which was stayed by Eisenberg's filing of an undertaking, it could not then effectively circumvent that procedure by moving for and obtaining a preliminary injunction. Eisenberg argues further that the trial court abused its discretion by granting the preliminary injunction because Water District did not establish that (1) it was likely to prevail on the merits on its conversion claim, and (2) after balancing the relative potential harms of the parties, the harm to Eisenberg in granting the preliminary injunction was less than the harm to Water District in denying the relief.

We conclude that under section 516.050, the claim and delivery law did not preclude Water District from seeking a preliminary injunction to recover possession of the Confidential Reports, notwithstanding the fact that it had previously applied for and obtained a writ of possession and a turnover order. The trial court therefore did not commit an error of law in granting the preliminary injunction. We conclude further that the court did not abuse its discretion in granting the injunctive relief after finding that (a)

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

4

it was likely that Water District would succeed on the merits of its claim for conversion of personal property, and (b) the likely harm to Water District in denying a preliminary injunction was greater than the harm to Eisenberg in the granting of such relief. Accordingly, we will affirm the order granting preliminary injunction.

## I.    PROCEDURAL BACKGROUND

### A.    The Complaint

On April 22, 2024, Water District filed a complaint against Eisenberg, alleging causes of action for conversion, trespass to chattels, breach of fiduciary duty, and declaratory relief.[2]  Water District alleged that after Eisenberg assumed her elected position as Board member in December 2022,[3] Water District received formal and informal complaints from its leadership and staff concerning Eisenberg's conduct (Staff Complaints), which it described as "behavior [that] was abrasive, unprofessional, or discomforting, including in ways that were perceived to be unlawfully discriminatory, harassing, and unlawfully created a hostile work environment," and that included "racially discriminatory statements" regarding another Board member.  Eisenberg also made complaints to Water District alleging gender-based discrimination and retaliation (Eisenberg Complaints).

As a result, Water District commenced concurrent investigations of the Staff Complaints and Eisenberg Complaints.  Water District retained outside counsel, who, in turn, retained another law firm, Meyers, Nave, P.C. (the Meyers firm), to conduct the investigations.  The law firm's investigations culminated in the two Confidential Reports

---

[2] Although unverified, the complaint, having been filed by a "district" within the meaning of section 446, had the operative effect of a verified complaint.  (See § 446, subd. (a); see also *Whitney v. Montegut* (2014) 222 Cal.App.4th 906, 913 [petition filed by executive director of Medical Board of California, was, pursuant to § 446, "deemed verified"]; *Murrieta Valley Unified School Dist. v. County of Riverside* (1991) 228 Cal.App.3d 1212, 1222–1223.)

[3] Eisenberg is also an attorney licensed to practice law in California.

5

completed in December 2023; they consisted of over 2,000 pages, and they "were clearly marked 'Confidential' and 'Attorney-Client Privileged.' " Separate "Executive Summar[ies]" of the two Reports were prepared. It was noted in the Executive Summary for the Staff Complaints Report that several of the allegations against Eisenberg were substantiated. In the Executive Summary for the Eisenberg Complaints Report, it was indicated that Eisenberg's allegations were not substantiated.

Water District alleged that in January 2024, it made single copies of the Confidential Reports available in a secured (accessible by key card) location of its offices for review by members of the Board; the directors were advised, through an e-mail sent by the Board Clerk on January 25, 2024, that they were not permitted to remove the Reports. Eisenberg reviewed the Reports on January 29, 2024; after several minutes, she removed the Reports from their binders and left Water District's headquarters with the Reports without Water District's permission. Eisenberg admitted at three Board meetings in February and March 2024 that she had taken the Reports from Water District's headquarters. On March 14, 2024, the Board voted to censure her conduct in taking the Confidential Reports and for the alleged conduct that was substantiated in the Report of the Staff Complaints.

In the prayer of the complaint, Water District sought, inter alia, injunctive relief and the issuance of a writ of possession.

## B. Writ of Possession

Water District filed its application for writ of possession on May 15, 2024. Eisenberg opposed the writ application. The writ application was based upon, inter alia, the allegations of the complaint concerning Eisenberg's wrongful taking and possession of the Confidential Reports. The application was accompanied by the declaration of Loyd Kinsworthy, senior management analyst in Water District's security office, who had investigated the January 29, 2024 incident and had located security camera footage showing Eisenberg carrying printed copies of the Reports through the lobby of Water

District's headquarters and placing them in her vehicle. Kinsworthy stated that Eisenberg had admitted during a Water District Board meeting on February 13, 2024, that she had taken the Reports home with her.

Water District argued that it was entitled under the claim and delivery law (§ 511.010 et seq.) to the issuance of a writ of possession to retrieve tangible property under section 512.010, and for a turnover order under section 512.070. Water District contended that it, as the client of the attorneys who prepared the Reports, was entitled to possess them, and that Eisenberg had no right to possess them.

Eisenberg opposed the writ application. She asserted that Water District could not establish the probable validity of its claim to possession of the Reports, and there was no legal authority supporting Water District's claim that it had an "exclusive possessory interest in the physical document."

Eisenberg also denied Water District's account of the events of January 29, 2024. She stated that "[o]ther than an email dated January 25, 2024, advising the directors that the [R]eports were available for review, there were no restrictions . . . that the [R]eports could only remain in the conference room or that they were not permitted to be removed from the conference room." Eisenberg stated further that the County Clerk declined Eisenberg's request for digital copies or for printed copies of the Reports. Eisenberg declared that she told the County Clerk that she would likely take the physical copies of the Reports with her. Thereafter, she left Water District's offices with those physical copies of the Reports. Eisenberg stated that after taking the Reports home, she made "significant annotations" to them with personal notes and comments.

After a hearing, the court granted Water District's writ application. Formal orders—a turnover order and an order for writ of possession—were entered on September 3, 2024. The turnover order required Eisenberg to turn over the Confidential Reports to Water District's counsel within five business days of the entry, subject to Eisenberg's being entitled to redact any handwritten notations made by her. The court also ordered

7

that Water District's counsel not review, copy or otherwise memorialize any of Eisenberg's handwritten notations on the Reports. The turnover order provided further that, upon return of the Reports and verification that they were complete, Water District's counsel was required to destroy the Reports. Finally, the court set an order to show cause hearing for October 17, 2024, for compliance with the turnover order.

In the order for writ of possession, the trial court found that Water District had established (1) the probable validity of its claim to possession of the Confidential Reports, and (2) there was probable cause that the Reports were located at Eisenberg's Palo Alto residence. The court ordered Eisenberg to transfer the Reports to the District and set an amount of $25,000 for Eisenberg to stay delivery of the Reports. On September 4, 2024, Eisenberg filed a written undertaking and deposited a cashier's check in the amount of $25,000 with the clerk of the superior court.

## C. Preliminary Injunction

On September 20, 2024, Water District filed a motion for a mandatory preliminary injunction pursuant to section 526, requiring Eisenberg to turn over the Confidential Reports under the same terms as provided in the court's September 3, 2024 turnover order. Water District relied in substantial part upon its prior writ application, Eisenberg's opposition thereto, the turnover order, and the order for writ of possession. Water District argued that because it owned the Confidential Reports and Eisenberg wrongfully removed them from Water District headquarters, it was likely to prevail on its claim for conversion. It asserted further that injunctive relief was appropriate because pecuniary compensation would not provide Water District with adequate relief. Water District argued that it had established the second requirement for injunctive relief by showing that the harm to its workplace if relief were denied was greater than any harm to Eisenberg if relief were granted.

Eisenberg argued in her opposition that injunctive relief was improper because "claim and delivery law provides a complete prejudgment remedy to recover possession

8

of personal property." She also contended that Water District had shown no " 'real threat of immediate and irreparable injury,' " and "[t]he balance of equities strongly favor[ed] Eisenberg . . . . " Eisenberg filed a prehearing request to present live testimony from two witnesses (including herself), which was opposed by Water District.

A hearing on Water District's motion for preliminary injunction occurred on October 17, 2024.[4] The trial court denied Eisenberg's request for an evidentiary hearing. After hearing argument, the court submitted the matter. On January 15, 2025, the court issued its formal order granting the motion for preliminary injunction.

In its order, the trial court recited that it had previously granted Water District's writ application under the claim and delivery law by issuing a writ of possession and a turnover order, determining in that proceeding the probable validity of Water District's claim to exclusive possession of the Reports. The court—identifying it as "the threshold legal question"—concluded that "the existence of this prior relief under claim and delivery does not preclude injunctive relief under the separate statutory scheme governing this independent provisional remedy." The trial court held further that Water District was likely to prevail on the merits. And, balancing the prospective relative harm to the parties, the court found that the harm the denial of the injunction would cause to Water District was greater than the harm that would result to Eisenberg if relief were granted.

The injunction required that Eisenberg turn over within 10 days to Water District's counsel the entirety of the Confidential Reports (including any copies). Eisenberg was given the option of redacting her handwritten notations on the Reports. Water District's counsel was directed not to review, copy, or take notes memorializing Eisenberg's handwritten notes. And—deviating from the terms of the prior turnover order requiring

---

[4] At the commencement of the hearing, the trial court, due to Eisenberg's having posted a bond, discharged the order to show cause related to the issuance of the writ of possession and turnover order.

9

destruction of the Reports—the court ordered that Water District's counsel not destroy the Reports.

Eisenberg filed a notice of appeal from the order granting preliminary injunction. (See § 904.1, subd. (a)(6).)

## II.     DISCUSSION

### A.     Applicable Law

#### 1.     *Claim and Delivery Law*

"Claim and delivery is a remedy by which a party with a superior right to a specific item of personal property (created, most commonly, by a contractual lien) may recover possession of that specific property before judgment." (*Waffer Internat. Corp. v. Khorsandi* (1999) 69 Cal.App.4th 1261, 1271.) The claim and delivery law is codified at section 512.010 et seq.

To obtain possession of tangible personal property through a writ of possession, the plaintiff must establish, inter alia, the basis for its claim, that it is entitled to possession of the property, and the defendant is wrongfully detaining the property. (See § 512.010, subd. (b).) The court shall issue a writ of possession after a hearing if the plaintiff establishes the probable validity of its claim for possession of the property. (See § 512.060, subd. (a)(1).) The plaintiff establishes "probable validity" by showing "it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim." (§ 511.090.) The court, in conjunction with the issuance of a writ of possession, "may also issue an order directing the defendant to transfer possession of the property to the plaintiff." (§ 512.070.) This turnover " 'order is not issued in lieu of a writ but rather in addition to or in aid of a writ, permitting the plaintiff to select a more informal and less expensive means of securing possession.' [Citation.]" (*Edwards v. Superior Court* (1991) 230 Cal.App.3d 173, 178 (*Edwards*).) "The defendant may prevent the plaintiff from taking possession of property pursuant to a writ of possession or regain possession of property so taken by filing with the court in which the action was brought an

10

undertaking in an amount equal to the amount of the plaintiff's undertaking … ."
(§ 515.020, subd. (a).)

### 2. *Injunctions*

The remedy of injunctions is governed by section 525 et seq. Under section 527, subdivision (a), a preliminary injunction may issue upon a verified complaint or declarations "show[ing] satisfactorily that sufficient grounds exist therefor.' " "An injunction is a writ or order requiring a person to refrain from a particular act." (§ 525.) As a general principle, " 'an injunction is prohibitory if it requires a person to refrain from a particular act and mandatory if it compels performance of an affirmative act that changes the position of the parties.' [Citation.]" (*Oiye v. Fox* (2012) 211 Cal.App.4th 1036, 1048 (*Oiye*).) Injunctions are generally prohibitory and are designed to preserve the status quo. (See *Integrated Dynamic Solutions, Inc. v. VitaVet Labs, Inc.* (2016) 6 Cal.App.5th 1178, 1183–1184.) But "[a] court also has the power to issue a preliminary injunction that ' " 'mandates an affirmative act that changes the status quo' " ' [citation], but should do so only in those 'extreme cases where the right thereto is clearly established.' " ' [Citation.]" (*Id.* at p. 1184.)

In determining whether to grant a preliminary injunction, the trial court " ' "evaluate[s] two interrelated factors … . The first is the likelihood that the plaintiff will prevail on the merits at trial. The second is the interim harm that the plaintiff is likely to sustain if the injunction were denied as compared to the harm the defendant is likely to suffer if the preliminary injunction were issued." ' " (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1109 (*Acuna*).) The trial court is "guided by a 'mix' of the potential-merit and interim-harm factors; the greater the plaintiff's showing on one, the less must be shown on the other to support an injunction. [Citation.]" (*Butt v. State of California* (1992) 4 Cal.4th 668, 678 (*Butt*).) A preliminary injunction, however, may

11

not issue, "regardless of the balance of interim harm, unless there is some possibility that the plaintiff would ultimately prevail on the merits of the claim.  [Citation.]"  (*Ibid.*)

An order granting or denying a preliminary injunction is not a dispositive ruling adjudicating the rights of the parties.  " 'It merely determines that the court, balancing the respective equalities of the parties, concludes that, pending a trial on the merits, the defendant should or . . . should not be restrained from exercising the right claimed by him [or her].'  [Citations.]"  (*Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512, 528 (*Katz*); see also *Acuna*, *supra*, 14 Cal.4th at p. 1109 [preliminary injunction "reflects nothing more than the [trial] court's evaluation of the controversy on the record before it at the time of its ruling"].)

### B.      Standard of Review

An order granting a preliminary injunction is ordinarily reviewed for abuse of discretion in which the appellate court determines whether "the trial court abused its discretion in evaluating the two interrelated factors … [of] (1) the likelihood that the plaintiff will prevail on the merits at trial, and (2) the interim harm that the plaintiff is likely to sustain if the injunction were denied as compared to the harm the defendant is likely to suffer if the preliminary injunction were issued."  (*Alliant Ins. Services, Inc. v. Gaddy* (2008) 159 Cal.App.4th 1292, 1299 (*Alliant Ins.*).)  "When . . . the trial court is presented with evidence on the two factors in both cases but fails to make express findings, [the appellate court] presume[s] that the trial court made appropriate factual findings [citation] and [it] review[s] the record for substantial evidence to support the rulings [citation]."  (*14859 Moorpark Homeowner's Ass'n v. VRT Corp.* (1998) 63 Cal.App.4th 1396, 1402–1403 (*VRT Corp.*).)  The appellate court will find an abuse of "discretion only when [the trial court] has exceeded the bounds of reason or contravened uncontradicted evidence.  [Citation.]  The burden rests with the party challenging the trial

court's ruling to make a clear showing of an abuse of discretion. [Citation.]" (*Alliant Ins.*, *supra*, at pp. 1310–1311.)

When "the preliminary injunction mandates an affirmative act that changes the status quo, we scrutinize it even more closely for abuse of discretion. 'The judicial resistance to injunctive relief increases when the attempt is made to compel the doing of affirmative acts. A preliminary mandatory injunction is rarely granted, and is subject to stricter review on appeal.' [Citation.] … '[t]he granting of a mandatory injunction pending the trial, and before the rights of the parties in the subject matter which the injunction is designed to affect have been definitely ascertained by the chancellor, is not permitted except in extreme cases where the right thereto is clearly established and it appears that irreparable injury will flow from its refusal. [Citations.]' [Citation.]" (*Board of Supervisors v. McMahon* (1990) 219 Cal.App.3d 286, 295, fn. omitted (*McMahon*).) "Although a preliminary mandatory injunction is subject to stricter review on appeal, [citation], '[t]he principles upon which mandatory and prohibitory injunctions are granted do not materially differ. The courts are perhaps more reluctant to interpose the mandatory writ, but in a proper case it is never denied.' [Citation.]" (*Ryland Mews Homeowners Assn. v. Munoz* (2015) 234 Cal.App.4th 705, 712, fn. 4 (*Ryland Mews*).)

Abuse of discretion is not the uniform standard for review of all preliminary injunctions. If the propriety of the order is based upon a legal question, the standard is " ' "whether the superior court correctly interpreted and applied [the] law, which we review de novo." ' [Citation.]" (*Strategix, Ltd. v. Infocrossing West, Inc.* (2006) 142 Cal.App.4th 1068, 1072 [appellate court reviewed de novo order involving question of whether trial "court correctly applied a statutory exception authorizing noncompetition covenants"].) Likewise, when—as is the case here—the appellate court, in reviewing an

13

order granting or denying a preliminary injunction, is called upon to consider "contentions turn[ing] on questions of statutory interpretation . . . such claims are [reviewed] de novo.  [Citation.]"  (*BBBB Bonding Corp. v. Caldwell* (2021) 73 Cal.App.5th 349, 364 (*BBBB Bonding*); see also *Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [trial court's interpretation of a statute is subject to independent review].)

### C.      Appellant's Burden of Establishing Error

Two guiding principles of appellate review are that the judgment or appealed order is presumed to be correct, and that the burden is on the appellant to demonstrate by an adequate record that the trial court committed prejudicial error.  As the California Supreme Court has explained:  "[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment.  [Citations.] 'This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.'  [Citations.]  'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court.  "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented." ' [Citation.]"  (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.)

### D.      Whether Granting of Writ of Possession Barred Injunctive Relief

Eisenberg contends that the trial court, in issuing a preliminary injunction after having previously granted Water District's application for writ of possession and turnover order, "erred as a matter of law."  Her position is that because she posted an undertaking to stay enforcement of the turnover order, the court's subsequent granting of the preliminary injunction effected "a wholesale elimination of [the claim and delivery]

remedy." Relying on *Simms v. NPCK Enterprises, Inc.* (2003) 109 Cal.App.4th 233 (*Simms*), Eisenberg contends further "that an injunction, while perhaps appropriate to restrain the removal of property (i.e., relief less drastic than repossession) is not appropriate to secure repossession of property."

Water District responds that section 516.050 compels the rejection of Eisenberg's position that the trial court erred as a matter of law.[5] The clear and unambiguous language of the statute, Water District asserts, provides that the claim and delivery law does not in any way limit a party's ability to seek interim injunctive relief concerning the possession of personal property.

### 1. *Interpretation of Section 516.050*

We apply traditional rules of statutory interpretation to determine whether the trial court here was authorized under section 516.050 to issue a preliminary injunction after having previously granted Water District's writ application. (See generally *Halbert's Lumber v. Lucky Stores* (1992) 6 Cal.App.4th 1233 (*Halbert's Lumber*).)[6] Courts apply the fundamental rule of construction of " ' "ascertain[ing] the intent of the Legislature so as to effectuate the purpose of the law." ' [Citations.]" (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698.) As many courts have recognized, statutory interpretation involves a process that has as many as (but not

---

[5] Eisenberg in her opening brief emphasizes the fact that Water District did not cite section 516.050 in its memoranda filed below, and it only cited the statute during argument on the motion. She does not, however, argue that the trial court erred by considering this statute. At the hearing, Water District's counsel acknowledged to the trial court that he had unintentionally omitted discussion of section 516.050 in his briefing. Eisenberg's counsel responded by indicating that Water District's counsel had advised her the day before the hearing of his intention to rely on the statute, and she had researched the issue before the hearing. She argued the merits of whether section 516.050 permitted Water District to seek injunctive relief.

[6] We note that there have been no published decisions interpreting (or even addressing) section 516.050.

15

always) three inquiries.  (See, e.g., *Alejo v. Torlakson* (2013) 212 Cal.App.4th 768, 787–788; *Halbert's Lumber*, *supra*, at pp. 1238–1240.)

A panel of this court has summarized this three-step approach:  "First, we will examine the language at issue, giving 'the words of the statute their ordinary, everyday meaning.'  [Citations.]  If we conclude that the statutory meaning is free of doubt, uncertainty, or ambiguity, the language of the statute controls, and our task is completed.  [Citations.]  Second, if we determine that the language is unclear, we will attempt to determine the Legislature's intent as an aid to statutory construction.  [Citations.]  In attempting to ascertain that intent, 'we must examine the legislative history and statutory context of the act under scrutiny.  [Citations.]'  [Citation.]  Third, if the clear meaning of the statutory language is not evident after attempting to ascertain its ordinary meaning or its meaning as derived from legislative intent, we will 'apply reason, practicality, and common sense to the language at hand.  If possible, the words should be interpreted to make them workable and reasonable [citations], … practical [citations], in accord with common sense and justice, and to avoid an absurd result [citations].'  [Citation.]"  (*Sisemore v. Master Financial, Inc.* (2007) 151 Cal.App.4th 1386, 1411.)

We consider the language of section 516.050:  "Nothing in this chapter [2, the claim and delivery law,] shall preclude the granting of relief pursuant to [the injunction provisions of] Chapter 3 (commencing with Section 525) of this title."  On its face, the statutory language is clear and unambiguous.  We give these words "the meaning they bear in ordinary use."  (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.)  We conclude that the language of section 516.050 must be read to state that the claim and delivery law provides a *nonexclusive remedy* for recovery of personal property insofar as it does not preempt the availability of injunctive relief under section 525 et seq.  There are no words of limitation in the statute.  (See *Suarez v. Pacific Northstar Mechanical, Inc.* (2009) 180 Cal.App.4th 430, 443 [rules of statutory construction do not permit courts

16

to " 'read into the statute a limitation that is not there' "].)  Section 516.050 plainly states that the statutory provisions authorizing injunctive relief—including the rights of litigants to seek such relief and courts' power to grant it—are in no way limited or circumscribed by the claim and delivery law.

Other courts have found similar statutory language to be clear and unambiguous. For instance, in *Acuna*, *supra*, 14 Cal.4th at page 1100, the trial court issued a preliminary injunction preventing certain activities in a particular neighborhood by the defendants, members of an alleged criminal street gang, relying on public nuisance statutes (Code Civ. Proc., § 731 and Civ. Code, § 3480).  Among other contentions, the defendants argued that the injunction was invalid because the STEP Act (California Street Terrorism and Enforcement Prevention Act, Pen. Code § 186.20 et seq.) was "the exclusive means of enjoining criminal street gangs and preempt[ed] use of the general public nuisance statutes." (*Acuna*, *supra*, at p. 1119.)  The California Supreme Court rejected the challenge. (*Ibid.*)

The Supreme Court noted that "[u]nder the STEP Act [Pen. Code, § 186.22a, subd. (a)], a building or place used by members of a criminal street gang for specified illegal activities is declared a nuisance per se." (*Acuna*, *supra*, 14 Cal.4th at p. 1119.)  That section of the STEP Act, the court explained, further "provide[s] that '*[n]othing in this chapter shall preclude any aggrieved person from seeking any other remedy provided by law*.' ([Pen. Code, § 186.22a], subd. (d).)" (*Acuna*, *supra*, at p. 1119, italics added.)  The court therefore concluded that "[b]y express provision, the [STEP ACT] *is not the exclusive remedy* for abating gang activity constituting a public nuisance. …[The STEP Act] thus *plainly contemplates remedies in addition to the act* to abate criminal gang activities, including those made available by the general public nuisance statutes."

17

(*Ibid.*, italics added.) *Acuna* supports our conclusion here. Addressing similar language found under the STEP ACT—i.e., " '[n]othing in this chapter shall preclude any aggrieved person from seeking any other remedy provided by law' " (*ibid.*)—the California Supreme Court construed the statutory scheme as providing *nonexclusive remedies* that were not intended to preempt other remedies found outside of the act in question.[7]

Given the plain meaning of section 516.050, which "is without ambiguity, doubt, or uncertainty, … [its] language controls and there is nothing to 'interpret' or "construe.' [Citation.]" (*Maricela C. v. Superior Court* (1998) 66 Cal.App.4th 1138, 1143; see also

_____

[7] Other courts have interpreted statutes and contracts containing the same "nothing … shall preclude" language in a manner that supports our interpretation here. (See, e.g., *Banc of America Leasing & Capital, LLC v. 3 Arch Trustee Services, Inc.* (2009) 180 Cal.App.4th 1090, 1103 [statutory procedure for trustee to determine priority of claims to excess proceeds from nonjudicial foreclosure sale, by providing that " '[n]othing in this section shall preclude any person from pursuing other remedies or claims as to surplus proceeds' " (Civ. Code, § 2924j, subd. (b)), indicated the "statutory scheme is not the sole remedy for claimants"]; *Watanabe v. California Physicians' Service* (2008) 169 Cal.App.4th 56, 63–64 [the court, finding that the first two sentences of statute (Health & Saf. Code, § 1371.25) unambiguously precluded imposition of vicarious liability upon health care service plan, held that it did not believe "the Legislature intended to re-impose [vicarious liability] by means of the third sentence of the statute, reading "[n]othing in this section shall preclude a finding of liability . . . based on the doctrines of equitable indemnity, comparative negligence, contribution, or other statutory or common law bases for liability"]; *Coast Plaza Doctors Hospital v. UHP Healthcare* (2002) 105 Cal.App.4th 693, 706 [rejecting conclusion that Department of Managed Care held exclusive jurisdiction over claims under act (Health & Saf. Code, § 1340 et seq.), holding that the law contemplated that other statutory and common law remedies could be asserted by private parties against health care plan; Health & Saf. Code, § 1371.25 provided that "[n]othing in this section shall preclude a finding of liability . . . based on the doctrines of equitable indemnity, comparative negligence, contribution, or other statutory or common law bases for liability"]; *Whiteside v. Tenet Healthcare Corp.* (2002) 101 Cal.App.4th 693, 703 [insurance policy that "plainly stated" that " '[n]othing in this Agreement shall preclude a Preferred Provider from seeking reimbursement from other third party payers … ' " constituted "unambiguous language"].

*Fitch v. Select Products Co.* (2005) 36 Cal.4th 812, 818 ["[i]f the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls"].)

Eisenberg, however, urges that the legislative history "limit[s] the scope of section 516.050." She quotes an excerpted comment of the Senate Legislative Committee, which reads: "The denial of a writ of possession, where denial was due to a close factual case on liability, should not prejudice such an application where an injunction will provide relief less drastic than repossession. See Section 516.050." (Sen. Com. on Judiciary, Rep. on Assem. Bill No. 103 (1973–1974 Reg. Sess.) as amended Apr. 23, 1973, p. 4.) From this one comment, Eisenberg contends that "the expressly stated legislative intent in enacting . . . section 516.050 was to permit an application for an injunction only if the relief sought is *less drastic than repossession*, not to permit an end-run around … section 515.020 … ." (Original italics.) Eisenberg's argument, for several reasons, lacks merit.

First, Eisenberg's position is premised on the conclusion that the language of section 516.050 is unclear or ambiguous in some fashion, thereby requiring that we move to the second step of interpretation—an examination of the statute's legislative history. (See *Halbert's Lumber*, *supra*, 6 Cal.App.4th at p. 1239.) Eisenberg has presented no argument challenging the facial clarity of section 516.050's language. Nor has she offered a competing interpretation of the statute to support her argument that the claim and delivery law in some way limits a plaintiff's ability to seek injunctive relief to recover possession of personal property. (See *Dabney v. Dabney* (2002) 104 Cal.App.4th 379, 384 [appellate courts "need not consider an argument for which no authority is furnished"].) We reiterate that because the statutory language is clear, we need not consider the legislative history of section 516.050. (See *Mt. Hawley Ins. Co. v. Lopez* (2013) 215 Cal.App.4th 1385, 1397.)

19

Second, the one-sentence excerpt of the committee comment on which Eisenberg relies—even were we to consider it—does not express that under section 516.050, injunctive relief was intended to be circumscribed in any fashion by the claim and delivery law. The statute provides that "[*n*]*othing* [in the claim and delivery law] shall preclude the granting of relief" under the injunction provisions of section 525 et seq. (§ 516.050, italics added.) The sentence in the comment does not negate this unqualified statutory language. (See *In re Steele* (2004) 32 Cal.4th 682, 694 [legislative history "cannot change the plain meaning of clear language"].)

Third, the excerpt from the legislative committee comment on its face does not preclude injunctive relief under the procedural setting presented here. The comment addresses a circumstance in which injunctive relief is sought after the *denial of* an application for writ of possession. In this case, we are concerned with a motion for preliminary injunction that was preceded by an order *granting* a writ of possession and a turnover order.

Fourth, even were we to agree that the one-sentence excerpt of the legislative committee comment to the effect that injunctive relief was available as a "less drastic" remedy than repossession provided some support for Eisenberg's position, other language in that comment undercuts her argument: "[A]lthough neither this section nor this chapter provides for injunctive relief generally, the claim and delivery remedy *is not an exclusive one, and the plaintiff may apply for injunctive relief under other provisions of this code.* . . . See Section 516.050." (Sen. Com. on Judiciary, Rep. on Assem. Bill No. 103 (1973–1974 Reg. Sess.) as amended Apr. 23, 1973, p. 4, italics added.) This comment is consistent with the plain meaning of the statute that the claim and delivery

law does *not* limit a plaintiff's right to seek injunctive relief under section 525 et seq. for the possession of personal property.

Fifth, acceptance of Eisenberg's position would effectively require us to rewrite section 516.050 to prevent injunctive relief for recovery of personal property, thereby limiting the availability of relief under the injunction provisions of section 525 et seq. in direct contradiction of the plan meaning of the statute. We are prohibited from taking this extraordinary action. "A court may not rewrite a statute, either by inserting or omitting language, to make it conform to a presumed intent that is not expressed. [Citations.]" (*Cornette v. Department of Transp.* (2001) 26 Cal.4th 63, 73–74; see also *Department of Corrections & Rehabilitation v. Workers' Comp. Appeals Bd.* (2018) 27 Cal.App.5th 607, 618, fn. 8 ["[w]e decline to read words into a statute that do not exist in its text"]; § 1858 ["[i]n the construction of a statute … the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted"].)

### 2. Simms *and Other Authorities*

#### a. Simms v. NPCK Enterprises, Inc.

In conjunction with her argument concerning the interpretation of section 516.050, Eisenberg relies on *Simms*, *supra*, 109 Cal.App.4th 233. She asserts that *Simms* "supports the reading of [section] 516.050 to allow injunctions regarding personal property only when they order relief less drastic than repossession." We disagree.

The plaintiffs in *Simms*, commercial lessees (tenants) operating a restaurant, deli, and meat market, sued their landlord and affiliated parties (collectively, landlord) for breach of the obligation to maintain the premises. (*Simms*, *supra*, 109 Cal.App.4th at p. 236.) Under the lease, tenants granted landlord a security interest in trade fixtures and equipment. (*Ibid.*) Tenants sought and obtained a temporary restraining order (TRO)

21

preventing landlord from demolishing a shed they had built on the property, but the trial court denied a preliminary injunction and dissolved the TRO. (*Id.* at p. 237.) Landlord then demolished the shed; its attempt at the time to repossess tenants' personal property (two meat smokers) located there was interrupted by the sheriff, who suggested landlord, to avoid a breach of the peace, seek a court order. (*Ibid.*) Landlord then sought and obtained an ex parte TRO requiring tenants to relinquish control over personal property and fixtures on the property in which landlord held a security interest—including the meat smokers that had been removed by tenants. (*Ibid.*) The next day, landlord filed a cross-complaint that included a request for injunction permitting repossession of the secured property. (*Id.* at p. 238.) Over tenants' opposition—which included the assertions that the underlying controversy was subject to arbitration, and the injunction sought was effectively an application for writ of possession for which landlord had not satisfied the procedural requirements—the trial court granted the injunction and held that tenants had waived arbitration. (*Ibid.*) Tenants appealed these orders. (*Ibid.*)

The *Simms* court reversed the orders. (*Simms*, *supra*, 109 Cal.App.4th at p. 244.) The appellate court considered tenants' challenge that landlord, in seeking possession of the secured property, had failed to do so by obtaining a writ of possession or complying with the requirements of the claim and delivery law. (*Id.* at p. 241.) The court concluded that landlord should have sought a writ of possession to recover the secured property. (*Id.* at pp. 242–243.) It reasoned that "[t]he claim and delivery law provides a complete prejudgment remedy to recover possession of personal property." (*Id.* at p. 242.) In addition, the *Simms* court stated that "[g]enerally, an injunction is not a proper remedy for recovering possession of personal property. [Citation.]" (*Simms*, *supra*, at p. 243.) Eisenberg relies on this statement in *Simms* to support her argument that section 516.050 should be construed "to allow injunctions regarding personal property only when they order relief less drastic than repossession." *Simms* does not support Eisenberg's position.

*Simms* is factually and procedurally distinguishable. There, landlord never sought relief under the claim and delivery law (nor did it comply with the requirements of that law). Instead, landlord—after obtaining an ex parte TRO and then belatedly filing a cross-complaint—sought and obtained an injunction to repossess tenants' personal property that included fixtures in which landlord held a security interest. Here, Water District *did* seek and obtain a writ of possession, the procedural vehicle preferred by the *Simms* court. Water District did so—complying with the requirements of the claim and delivery law—before it sought mandatory injunctive relief to obtain possession of the Confidential Reports.

Additionally, the circumstances involving the personal property in the two cases are significantly different. In *Simms*, the repossessed personal property consisted of business equipment owned by tenants in which landlord admittedly held a secured interest. Here, the personal property consisted of physical documents that Water District indisputably owned, claimed were confidential, and to which it had a right of possession. (See pt. II.E.2., *post*.) The documents were taken without Water District's permission by Eisenberg, a person who had no ownership claim or apparent right to possess the personal property. The language of *Simms* underscores that the court's focus in considering remedies for recovery of personal property was its repossession *from* the owner/possessor *by* the party holding a security interest in that property: "A writ of possession is an appropriate remedy *for a secured party to obtain possession of collateral*; we consider whether an injunction is also." (*Simms*, *supra*, 109 Cal.App.4th at p. 243, italics added.) Here, (1) the writ of possession and later-issued injunction did *not* involve collateral; (2) the relief was *not* granted in favor of a party holding a security interest in property; and (3) the relief was *not* against another party who owned and possessed the property.

Moreover, and of greatest significance to our analysis here, *Simms* contains no mention of section 516.50, a statute enacted 30 years before the case was decided. The *Simms* court therefore did not discuss or determine whether, by express statutory

23

language, the relief concerning personal property provided in the claim and delivery law precluded similar relief under the injunction provisions of section 525 et seq. Thus, *Simms* cannot be viewed as interpreting—or as Eisenberg apparently urges, limiting the effect of—section 516.50 in any fashion. (See *Sagonowsky v. Kekoa* (2016) 6 Cal.App.5th 1142, 1156 (*Sagonowsky*) [" '[c]ases do not stand for propositions that were never considered by the court' "].)[8]

### b. San Antonio Water Co. v. Bodenhamer & Sierra Water

The court in *Simms*, *supra*, 109 Cal.App.4th at page 243, in making the statement that "[g]enerally, an injunction is not a proper remedy for recovering possession of personal property [citation]," relied on *San Antonio Water Co. v. Bodenhamer* (1901) 133 Cal. 248, 251 (*San Antonio Water*). That case does not support Eisenberg's contention that the trial court here was precluded from granting Water District's motion for preliminary injunction after it had granted the return of personal property under the claim and delivery law.

*San Antonio Water*, *supra*, 133 Cal. 248—like *Simms*, *supra*, 109 Cal.App.4th 233—involved very different circumstances than those presented in this case. The parties there had a business venture for irrigation of lands in which the defendants performed the development work and the plaintiff provided the funding, the property at issue in the litigation being in the defendants' possession. (*San Antonio Water*, *supra*, 133 Cal. at pp. 249–250.) The plaintiff alleged that the defendants had "wrongfully and by force prevented, and threaten[ed] to continue to prevent, the plaintiff from pumping water from [a] well" on the property. (*Id.* at p. 250.) The trial court granted a preliminary injunction

---

[8] To the extent, *Simms*, *supra*, 109 Cal.App.4th at page 233 may be viewed as standing for the proposition that the claim and delivery law limits in any way a plaintiff's right to seek injunctive relief under section 525 et seq., we disagree with that conclusion. As we have discussed, the plain language of section 516.050 is to the contrary.

in favor of plaintiff *without notice to the defendants*, and it later, upon the defendants' appearance, denied their motion to dissolve the order. (*Id.* at pp. 250–251.)

The Supreme Court reversed the order denying the defendants' motion to dissolve the injunction. (*San Antonio Water*, *supra*, 133 Cal. at p. 253.) The Court emphasized that the motion to dissolve was the issue before it, not the injunction itself from which the defendants had taken no appeal. (*Id.* at pp. 251–252.) It noted, however, that the injunction, had it been appealed, would have probably been reversed, concluding it was highly irregular that an injunction was issued ex parte that had the effect of dispossessing the defendants from their land. (*Id.* at p. 251.) It was in this context that the Supreme Court stated: " '[A]s a general rule, courts of equity will not interfere by preliminary injunctions to change the possession of real property, the title being in dispute'; nor is it a proper remedy for recovering possession of personal property. [Citations.]" (*Ibid.*)[9] In reversing the order denying the motion to dissolve the injunction, the Supreme Court concluded that, given that the defendants were in possession of the real property pursuant to the existing contract, the plaintiff having previously defaulted and surrendered possession (*id.* at pp. 252–253), it could not "perceive . . . any grounds for an injunction" (*id*. at p. 253).

*San Antonio Water*, for several reasons, does not support Eisenberg's contention that the court may not grant a preliminary injunction ordering the transfer of personal

---

[9] Each of the three cases cited by the Supreme Court in *San Antonio Water*, *supra*, 133 Cal. at page 251 in support of the principle quoted above involved injunctive relief, *issued ex parte*, that *related to real property*. (See *Williams v. Long* (1900) 129 Cal. 229 [reversal of preliminary injunction issued ex parte in favor of the plaintiff enjoining the defendants from entering a mining site in their possession]; *Toledo, A.A. & N.M.R. Co. v. Detroit, L. & N.R. Co.* (1886) 61 Mich. 9 [reversal of preliminary injunction issued without notice preventing the defendants in possession from interfering with the plaintiff's entry on property to construct a bridge, which constituted a final decree changing possession of property]; *Arnold v. Bright* (1879) 41 Mich. 207 [reversal of injunction issued ex parte commanding the defendants to relinquish possession of a farm that they lawfully occupied under a lease with the plaintiff].)

property under section 526 where that relief is available under the claim and delivery law. First, the Supreme Court in *San Antonio Water* did not address proceedings involving claim and delivery or common law replevin to recover possession of personal property. The decision cannot be read as providing any guidance concerning the availability of injunctive relief to recover possession of personal property where the claim and delivery law affords the same or similar relief. (See *Sagonowsky*, *supra*, 6 Cal.App.5th at p .1156 [" '[c]ases do not stand for propositions that were never considered by the court' "].)[10]

Second (and relatedly), *San Antonio Water*, *supra*, 133 Cal. 248—the case upon which the *Simms* court relied to support its statement that an injunction is generally not the appropriate remedy for recovery of possession of personal property (see *Simms*, *supra*, 109 Cal.App.4th at p. 243)—did not concern a plaintiff invoking claim and delivery for return of personal property. Rather, it concerned a challenge to what was effectively a preliminary injunction issued without notice compelling the defendants to

---

[10] We mention briefly *Voorhies v. Greene* (1983) 139 Cal.App.3d 989 (*Voorhies*). There, the plaintiff, an attorney, sued his former employer, a law firm, after his ouster from the business. (*Id.* at p. 993.) He obtained a preliminary injunction that included orders that he receive access to and use of the office premises, maintenance of his employee status, access to law firm's books and records and client files, and the reinstatement of all conditions under his employment agreement. (*Ibid.*) The appellate court, in reversing the injunction, cited and relied in part on the quote from *San Antonio Water*, *supra*, 133 Cal. at page 251, that generally injunctive relief is unavailable to change possession of real property or to recover possession of personal property. (*Voorhies*, *supra*, at pp. 996, 997–998.) But the *Voorhies* court also reasoned that an injunction was improper because injunctive relief "would not be granted on the mere allegations of wrongful discharge from employment," and it appeared that the plaintiff had an adequate remedy at law. (*Id.* at p. 997.) *Voorhies* is distinguishable. The case did not involve the claim and delivery law, and—as the trial court observed in its order granting preliminary injunction—did not even mention section 516.050. *Voorhies* does not offer support for Eisenberg's position that an injunction is not available for the recovery of personal property.

transfer to the plaintiff *real property* upon which a well was located. (See *San Antonio Water*, *supra*, at pp. 250–251.)[11]

Third, *San Antonio Water* was decided over 70 years prior to the enactment of section 516.50. Consequently, it provides no guidance to the interpretation of that statute. (See *Sagonowsky*, *supra*, 6 Cal.App.5th at p .1156.)

### c. Edwards v. Superior Court

Eisenberg also cites *Edwards*, *supra*, 230 Cal.App.3d 173. There, the trial court granted an application for writ of possession and issued a turnover order requiring the defendants/petitioners to transfer possession of a show dog. (*Id.* at p.176.) The petitioners filed a counterbond under section 515.020 in lieu of complying with the turnover order (*id.* at pp. 176–177); the trial court nonetheless held them in contempt for violating the turnover order, holding that the counterbond did not excuse compliance with the order (*id.* at p. 177).

The appellate court rejected the argument made in the trial court's response filed in the writ proceeding that section 515.020 did not apply "because the court 'intended its order as a mandatory injunction.' " (*Edwards*, *supra*, 230 Cal.App.3d at p. 178.) The appellate court held that "[w]hatever may have been the intent of the superior court, it did grant a writ of possession, not a mandatory injunction." (*Ibid.*) The court directed that the contempt order be vacated, concluding that under the claim and delivery law, a turnover order "is not a separate remedy but rather an alternative means of enforcing a writ of possession" (*ibid.*), and the filing of a counterbond both prevents the seizure of the subject property and excuses compliance with the turnover order (*ibid.*).

---

[11] The Supreme Court concluded that the injunction "operated, in effect, 'as a writ of restitution." (*San Antonio Water*, *supra*, 133 Cal. at p. 251.) In other words, the injunction was effectively a writ to enforce a judgment for restitution of *real property*, i.e., the transfer of *real property* upon which a well was located. (See §§ 712.010, 1174, subd. (c).)

The *Edwards* court did not mention section 516.050. Nor did the court address the theoretical propriety of the plaintiff's application for the issuance of a preliminary injunction under section 525 et seq. ordering the transfer or personal property. Rather, because the trial court had issued a writ of possession and turnover order, and had not issued such a mandatory injunction, the court declined to consider whether the counterbond procedures of the claim and delivery law under section 515.020 would apply had it done so. (*Edwards*, *supra*, 230 Cal.App.3d at p. 178.) Thus, *Edwards* does not assist Eisenberg's argument that a preliminary injunction was improperly granted by the trial court because it had previously granted Water District's writ application.

### d. **Pillsbury, Madison & Sutro v. Schectman**

Water District relies on *Pillsbury, Madison & Sutro v. Schectman* (1997) 55 Cal.App.4th 1279, 1282 (*Pillsbury*) in support of its position that a preliminary injunction is available to recover possession of personal property. In *Pillsbury*, the plaintiff (law firm) brought suit for recovery of personal property (documents) and for injunctive relief. The defendants were an attorney and his firm that represented current and former law firm employees; plaintiff law firm alleged that the defendants had improperly gained possession of its confidential personnel documents. (*Ibid.*) The trial court issued a pretrial order compelling the defendants to return the documents to law firm, basing the ruling on (a) the claim and delivery law (§ 511.010 et. seq.), (b) statutes providing for injunctive relief (§ 525 et seq.), and (c) "the court's inherent authority to administer the resolution of disputes." (*Pillsbury*, *supra*, at p. 1282.)

The appellate court noted that the appeal concerned *only* the trial court's granting of the preliminary injunction. (See *Pillsbury*, *supra*, 55 Cal.App.4th at pp. 1283–1284.) The court affirmed the order. (*Id.* at p. 1289.) It rejected the defendants' contention that " 'mere ownership' of the documents should not be a sufficient basis for ordering their return." (*Id.* at p. 1286.) The *Pillsbury* court approved of the trial court's issuance of a mandatory preliminary injunction to address the defendants' conduct, stating its

28

agreement with other courts "which have refused to permit 'self-help' discovery which is otherwise violative of ownership or privacy interests and unjustified by any exception to the jurisdiction of the courts to administer the orderly resolution of disputes. … The least sanction cognizable in these circumstances would appear to be the one chosen by the trial court here: the return to the status quo existing at the time the documents were taken." (*Id.* at p. 1289.)

The court in *Pillsbury* did not specifically hold that a preliminary injunction was an appropriate remedy to order the defendant to return the plaintiff's personal property (i.e., documents). And the appellate court did not address section 516.050. Our reading of *Pillsbury*, however, is that the court, in affirming the preliminary injunction order—the only order at issue in the appeal[12]—implicitly approved of the use of a mandatory injunction under section 526 to recover the personal property, even in an instance in which the court also grants relief under the claim and delivery law.

Furthermore, the circumstances in *Pillsbury* parallel in some ways the facts here; and the circumstances of both cases differ substantially from those in *Simms*, *supra*, 109 Cal.App.4th 233. In *Pillsbury*, *supra*, 55 Cal.App.4th 1279, the court concluded that the defendants—the parties ordered to return personal property (documents) by mandatory preliminary injunction—had engaged in self-help to possess documents to which they had no claim. (See *id.* at pp. 1287, 1288; see also *id.* at p. 1287 [characterizing the defendants' conduct as "the wrongful possession of confidential documents for use in anticipation of litigation against [law firm]"].) Likewise, here, Eisenberg presented no

---

[12] Eisenberg attempts to distinguish *Pillsbury*, asserting that in addition to a preliminary injunction, law firm also obtained a turnover order and "[t]hus, … sought injunctive relief provided for in the claim and delivery statutes and [the defendants] did not post the bond that would have stayed enforcement of a turnover order." This argument ignores this salient point: The only part of the order that was reviewed in the appeal was the order granting preliminary injunction, which was separate and apart from relief sought under the claim and delivery law. (See *Pillsbury*, *supra*, 55 Cal.App.4th at pp. 1283–1284.)

29

evidence that she had an ownership interest in the Confidential Reports and provided, at best, a scant showing of a right to possess the property. In contrast to both the circumstances here and in *Pillsbury*, in *Simms*, the defendants seeking injunctive relief held an undisputed security interest in the personal property in question. (See *Simms*, *supra*, at p. 236.)

Other cases have likewise addressed challenges to orders granting preliminary injunctive relief requiring the return of personal property in which the courts have, without specifically addressing the issue, implicitly held that injunctive relief untethered to the claim and delivery law was an appropriate remedy to secure the return of personal property. (See, e.g., *Millennium Corporate Solutions v. Peckinpaugh* (2005) 126 Cal.App.4th 352, 358–359 [preliminary injunction ordering return of client files]; *Gladstone v. Hillel* (1988) 203 Cal.App.3d 977, 984 [mandatory preliminary injunction issued compelling the defendant to return jewelry molds required for the plaintiff's custom jewelry business]; *Conn v. Superior Court* (1987) 196 Cal.App.3d 774, 785 [order compelling former employee to return voluminous records of employer (in-house files and privileged communications with counsel) he took at termination upheld in writ proceeding]; *McCain v. Phoenix Resources, Inc.* (1986) 185 Cal.App.3d 575, 578 [affirmance of preliminary injunction restraining general partner from "refusing to make available for inspection" by limited partners the partnership records, effectively a mandatory injunction requiring production of the records].)

### 3.    *Conclusion: Legal Viability of Issuance of Injunction*

We reject Eisenberg's argument that the trial court erred because a preliminary injunction cannot be used as a remedy to recover personal property when the same or similar relief is available under the claim and delivery law. The contention is contrary to the plain language of section 516.050 that the claim and delivery law does not preclude

30

relief that a party may seek under statutes governing injunctions (§ 525 et seq.). Accordingly, based upon our de novo review of this interpretation issue that is central to this appeal (see *BBBB Bonding*, *supra*, 73 Cal.App.5th at p. 364), we conclude that the trial court did not err as a matter of law in granting the preliminary injunction.

### E. Whether Issuance of Injunction Was an Abuse of Discretion

#### 1. *Process Challenges*

A recurring theme in Eisenberg's appellate briefs is that the trial court did not treat her fairly in considering the parties' respective positions before granting the preliminary injunction. We address initially Eisenberg's challenges to the process by which the court reached its decision, concluding they are without merit.

Eisenberg makes several broad generalizations that the trial court did not adequately consider the matter, including her opposition to the motion, before granting Water District's motion for preliminary injunction. They include her contentions that the court: (1) "fail[ed] to consider the [Water] District's total lack of evidence in support its injunction request"; (2) "refus[ed] to consider [Eisenberg's] evidentiary material," in fact, "complete[ly] disregard[ing]" it; (3) "rel[ied] solely on the writ of possession record" in granting the motion; (4) "ignored [Eisenberg's] verified answer and supporting evidence"; (5) "fail[ed] to take into account Eisenberg's affirmative defenses in her verified answer"; (6) "fail[ed] to weigh the parties' respective harms that would result from granting or denying injunctive relief" and "disregarded the obvious harm" to her if the relief were granted; and (7) "refused to articulate any factual findings" in support of its decision. These claims are speculative and unsupported by the record. The record does not show that the trial court failed to perform its duty to consider the evidence presented in ruling on the motion for preliminary injunction. (Cf. *In re M.V.* (2025) 109 Cal.App.5th 486, 518 [rejecting appellant's complaints, unsupported by citations to the record, concerning juvenile court's conduct, including assertions it "acted as an advocate, … attempted to prevent the expert witness from testifying, mischaracterized witness

31

testimony, and relied on speculation rather than evidence to ignore [testimony of] a witness"].)  Moreover, Eisenberg's position is founded on the erroneous assumption that the trial court was required to make specific findings.

We reiterate that our task is to determine whether the trial court, in granting injunctive relief, abused its discretion in assessing the twin concerns of whether the moving party was likely to prevail on the merits and the relative interim harm the parties would sustain from the grant or denial of injunction request.  (See *Dodge, Warren & Peters Ins. Services, Inc. v. Riley* (2003) 105 Cal.App.4th 1414, 1420 (*Dodge, Warren*).)  The trial court is not required to prepare a statement of decision or explain its reasoning: " 'The denial of a preliminary injunction does not require any statement of decision or explanation.' [Citation.]" (*Whyte v. Schlage Lock Co.* (2002) 101 Cal.App.4th 1443, 1450 (*Whyte*).)  Thus, "the fact that the court's conclusion is set forth in summary fashion does not mean the court failed to engage in the requisite analysis, or that its analysis was incorrect." (*City of Los Altos v. Barnes* (1992) 3 Cal.App.4th 1193, 1198.)  Thus, the appellate court will "presume the [trial] court considered every pertinent argument and resolved each one consistently with its [] order . . ." (*Whyte*, *supra*, at p. 1451.)

Here, the trial court elected not to provide a statement of facts in its order, noting that it had previously found the Water District had established the probable validity of its claim in conjunction with its writ application.  Eisenberg apparently asserts that this alleged "refusal to articulate factual findings upon which the order issued" was itself an abuse of discretion.  Her failure to cite legal authority to support this point "amounts to an abandonment of the issue." (*People ex rel. 20th Century Ins. Co. v. Building Permit Consultants, Inc.* (2000) 86 Cal.App.4th 280, 284.)  The position is, in any event, meritless.  The trial court was not obligated to prepare a statement of decision or explain its reasoning.  (See *Whyte*, *supra*, 101 Cal.App.4th at p. 1450.)  Moreover, we do not

presume that the trial court failed to conduct a proper and thorough analysis of the record in reaching its decision. (See *id.* at pp. 1450–1451.) Eisenberg cites *Kemp Bros. Construction, Inc. v. Titan Electric Corp.* (2007) 146 Cal.App.4th 1474, 1477 (*Kemp Bros.*) in support of her position. But in *Kemp Bros.*, the court found that the presumption of the trial court's correctness was overcome by "the record[, which] demonstrate[d] the trial judge [had] not weigh[ed] the evidence." (*Ibid.*) The record here does not support the claim that the trial court failed to weigh the evidence.

Moreover, in arguing the trial court failed to perform its duties in considering the evidence and her affirmative defenses, Eisenberg disregards the court's recital in its order that it had "reviewed and considered the pleadings, the parties' papers supporting and opposing the motion, the matters of which the court [took] judicial notice, and the applicable law." Additionally, at the hearing on the motion, although most of the parties' arguments concerned section 516.050 and whether injunctive relief was available after the court had granted relief under the claim and delivery law, the court did hear argument concerning Eisenberg's defense asserting that Water District had violated the Brown Act, and it offered responsive comments to Eisenberg's position.[13] Furthermore, the court heard argument concerning the respective harms to the parties—an issue cursorily presented in Eisenberg's written opposition—and in fact (contrary to Eisenberg's assertion) it stated in its order that it *had weighed* the parties' respective harms resulting from the grant or denial of injunctive relief.[14]

---

[13] The trial court expressed its skepticism about Eisenberg's affirmative defense, indicating it was uncertain how invoking alleged Brown Act violations "alter[ed] the rights to the personal property."

[14] In her reply brief, Eisenberg quotes a brief passage from the reporter's transcript of the hearing, arguing that the trial court's preliminary comments indicate it did not properly weigh all the evidence in ultimately granting Water District's motion for preliminary injunction. Eisenberg reasserted this position during oral argument,

Additionally, Eisenberg apparently asserts error with respect to two other evidentiary matters. First, she takes exception to the trial court's ruling denying her request to present the testimony of two witnesses at the hearing on the injunction motion. Second, Eisenberg suggests that the trial court erred by declining to rule on the parties' evidentiary objections. Eisenberg does not support her position that the trial court erred regarding these evidentiary issues with argument or relevant legal authority. We will deem both purported arguments as abandoned. (See *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 ["conclusory presentation, without pertinent argument or an attempt to apply the law to the circumstances of this case" will result in issue being treated as abandoned].)[15]

_____

contending that the court's comments clearly demonstrate that it did not perform its duties to consider and weigh the facts in support of, and in opposition to the motion. We have reviewed the entire transcript of the hearing. We do not agree with Eisenberg's characterization of the trial court's comments at the commencement of the hearing. Nor do we agree that the court indicated that it would not perform its duty of considering and weighing the evidence before it, including resolving issues of credibility, in deciding whether to grant injunctive relief. (See *Oiye*, *supra*, 211 Cal.App.4th at p. 1049.) " '[A] trial court is presumed to have been aware of and followed the applicable law. [Citations.]' " (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114.) We therefore do not presume that the court incorrectly understood its role in assessing and weighing the evidence in ruling on the motion. Moreover, as discussed, any assumption that the court chose not to consider and weigh all the evidence is belied by the trial court's statement to the contrary that in granting the motion, it had "reviewed and considered the pleadings, the parties' papers supporting and opposing the motion, the matters of which the court takes judicial notice, and the applicable law … ."

[15] In her reply brief, Eisenberg attempts to clarify her position that the court's denial of her request to present oral testimony, of itself, may not have been error, but that the ruling, in conjunction with the trial court's alleged "failure to weigh all the claims and defenses before it," constituted an abuse of discretion. For the reasons we have stated, Eisenberg's contention that the court did not fulfill its duties to consider all evidence before it is unsupported speculation. Our acceptance of her argument would require us to presume that the trial court failed to conduct a proper and thorough analysis of the record in reaching its decision, which presumption is contrary to our role in reviewing the order. (See *Whyte*, *supra*, 101 Cal.App.4th at pp. 1450–1451.)

34

### 2. *Likelihood of Water District Prevailing*

In reviewing the trial court's order granting preliminary injunction, we address the first prong, i.e., the likelihood of Water District prevailing on the merits of its underlying claim for conversion. (See *Acuna*, *supra*, 14 Cal.4th at p. 1109.) Since the injunctive relief is preliminary in nature and is not an adjudication of the merits (see *Katz*, *supra*, 68 Cal.2d at p. 528), Water District was not required to present a " 'clear showing' of eventual success on the merits." (*IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 73, fn. 6.) Rather, Water District was only required to meet the "less rigorous 'reasonable probability' [of prevailing] standard." (*Ibid.*)

The trial court properly concluded that Water District satisfied this first prong required for injunctive relief. The three elements of Water District's claim for conversion of the Confidential Reports, as alleged in the complaint, are "(1) the plaintiff's ownership or right to possession of personal property; (2) the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages. [Citation.]" (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 119 (*Fremont Indemnity*).)

#### a. Conversion: Ownership/Right to Possession

With respect to the first element, the undisputed evidence was that the Confidential Reports were generated by the Meyers firm, counsel retained by Water District. "The law is clear that 'an attorney's work product belongs absolutely to the client.' [Citation.]" (*John F. Matull & Associates, Inc. v. Cloutier* (1987) 194 Cal.App.3d 1049, 1056.) This principle applies even if "the attorney has [not] been paid for his [or her] services [citation]." (*Kallen v. Delug* (1984) 157 Cal.App.3d 940, 950.) Water District clearly established its "ownership or right to possession of personal property [the Reports]." (*Fremont Indemnity*, *supra*, 148 Cal.App.4th at p. 119.)

35

Eisenberg, however, argues at length that Water District did not satisfy this element of conversion because: (1) the Confidential Reports were not protected by the attorney work product privilege; (2) even if they were subject to the privilege, it was assertable by the attorney, not by the client; (3) the privilege did not apply because Eisenberg was not seeking discovery of the Reports; and (4) any privilege that might have been asserted by Water District was waived. We may summarily dispose of these contentions. The term "work product," as used here in determining whether Water District has an ownership or possessory interest in the Confidential Reports prepared by the Meyers firm, is meant to convey only the fruits of the attorneys' work performed on behalf of and at the request of their client, Water District. The term is not used in the context of the application of the attorney work product privilege or the assertion of that privilege in response to discovery efforts. (See generally *Coito v. Superior Court* (2012) 54 Cal.4th 480, 488–494 [discussing attorney work product privilege applicable to discovery materials as codified under § 2018.030].)[16]

### b. Conversion: Disposition Inconsistent with Property Rights

Water District presented evidence, through its complaint (see fn. 2, *ante*) and declaration of its Board Clerk, to support the second conversion element, i.e., that "the defendant's disposition of the property [was] in a manner . . . inconsistent with the plaintiff's property rights." (*Fremont Indemnity*, *supra*, 148 Cal.App.4th at p. 119.) This evidence included that: (1) in January 2024, Water District made available to Board directors single copies of the Confidential Reports in a secured location of its offices; (2) the Board Clerk, at the Board Chair's direction, was tasked with arranging for the directors to be able to review in-person single physical copies of the Reports at a secured

_____

[16] The purpose of the attorney-client privilege "is to preserve the rights of attorneys in the preparation of their cases and to prevent attorneys from taking advantage of the industry and creativity of opposing counsel. The attorney is the exclusive holder of the privilege." (*State Comp. Ins. Fund v. Superior Court* (2001) 91 Cal.App.4th 1080, 1091.)

room at Water District's headquarters; (3) the review protocol by Board directors of the Reports was atypical of the normal review of confidential documents by Board directors that were transmitted to them by mail, e-mail, or Federal Express, and it "was reflective of the level of precautions imposed by [Water District] to protect the confidentiality of the [Reports]"; (4) the directors were advised that they were not permitted to remove the Reports from the secure room; (5) Eisenberg reviewed the Reports on January 29, 2024 and left after several minutes, removing the Reports from their binders and taking them from Water District's headquarters without its permission; (6) Eisenberg never asked the Board Clerk for redacted copies of the Reports; and (7) Eisenberg never told the Board Clerk that it was likely that she would take home the printed copies of the Reports. Eisenberg admitted at three Board meetings in February and March 2024 that she had taken the Reports from Water District's headquarters. On March 14, 2024, the Board voted to censure her conduct in taking the Confidential Reports. Water District attempted unsuccessfully from January to April 2024 to obtain Eisenberg's return of the Reports. The record thus shows that Water District established the second conversion element.

It is unclear whether Eisenberg contends that Water District failed to establish that her disposition of the Reports was inconsistent with Water District's property rights. Eisenberg does not separately argue the question in her briefs. She does, however, emphasize the conflict between her account and Water District's account of whether her access to the Reports was restricted or whether she was told the Reports could not be removed from Water District's headquarters. Eisenberg has made an insufficient showing to preserve any contention that Water District failed to establish the second conversion element. It is therefore forfeited. (See *Hollingsworth v. Heavy Transport, Inc.* (2021) 66 Cal.App.5th 1157, 1172 (*Hollingsworth*) [legal contentions alluded to in introduction but not included argument section of opening brief, under an appropriate heading, are forfeited].)

37

Nonetheless, this conflict in the evidence does not undermine the trial court's implicit finding that Water District established the second element of its conversion claim. "Regardless of whether the trial court has granted or denied an application for a preliminary injunction, if the evidence before that court was in conflict, we do not reweigh it or determine the credibility of witnesses. '[T]he trial court is the judge of the credibility of the affidavits filed in support of the application for preliminary injunction and it is that court's province to resolve conflicts." [Citation.] Further, if the evidence on the application is in conflict, we must interpret the facts in the light most favorable to the prevailing party and indulge in all reasonable inferences in support of the trial court's order. [Citation.]" (*Hilb, Rogal & Hamilton Ins. Services v. Robb* (1995) 33 Cal.App.4th 1812, 1820, fn. omitted.)

### c. Conversion: Resulting Damage

Water District presented evidence to support the third element of its claim, resulting damage. It showed that Eisenberg's taking of the Confidential Reports jeopardized Water District's policies and procedures, including antiretaliation policies, based upon staff concerns that Eisenberg's access to unredacted Reports identifying witnesses interviewed in investigations would allow her to retaliate against those witnesses for their statements. There was evidence that Eisenberg's continued possession of the Reports was having a chilling effect upon the willingness of employees to participate in investigations. Water District's additional damages included the cost of its efforts to secure the return of the Reports.

As is the case with the second element, it is unclear whether Eisenberg contends that Water District failed to establish resulting damage. She does not separately argue the question in her briefs. Eisenberg does, however, contend that Water District's asserted harm resulting from her possession of the Reports was "speculative and unsubstantiated."

38

She has failed to preserve the contention; it is forfeited.  (See *Hollingsworth*, *supra*, 66 Cal.App.5th at p. 1172.)

Because there was substantial evidence supporting each element of Water District's claim for conversion, the trial court did not abuse its discretion in concluding there was a substantial likelihood that Water District would prevail on the merits on this claim.[17]

### 3.    *Balancing of Relative Harms*

Eisenberg contends that the trial court erred because it "did not adequately analyze how the harm caused to the [Water] District by a denial of the injunction would outweigh the irreparable harm caused to Eisenberg by the grant of an injunction."  (Initial capitalization omitted.)  She argues that Water District's alleged harms from the potential denial of an injunction were "speculative and unsubstantiated" because she had been given the right to review the Reports in full.  Eisenberg claims that the harm to her in the issuance of the injunction was "substantial," because requiring her to turn over the Reports would disclose to Water District privileged information and work product from the annotations and comments she made on the Reports.

----

[17] The trial court concluded that Water District had established a likelihood that it would prevail on the merits on its conversion claim, observing that it had previously determined in connection with the writ application "the probable validity of the [Water] District's claim to rightful possession of the Confidential Reports, which is the functional equivalent of determining its likelihood of prevailing on the merits of its conversion cause of action."  We find the court's reasoning to be sound.  (See § 511.090 [the plaintiff demonstrates "probable validity" requirement for writ of possession by showing "it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim"]; cf. *Howard S. Wright Construction Co. v. Superior Court* (2003) 106 Cal.App.4th 314, 319–320 [appellate court applies injunction standard of review to appeal of expungement order; where issue in determining motion to expunge lis pendens is probable validity of the lien, review standard is analogized "to the evaluation of the plaintiff's 'likelihood of success' for issuance of a preliminary injunction"].)

As we have discussed, *ante*, Water District presented evidence that Eisenberg's taking and continued possession of the Confidential Reports jeopardized Water District's policies, including antiretaliation policies, and had a chilling effect upon the willingness of employees to participate in investigations. This claimed chilling effect upon employees was detailed by Water District's chief executive officer, Enrico Callendar. He described an "environment of fear" that Eisenberg's taking and ongoing possession of the Reports had created in the workplace.[18]

The trial court concluded that, in balancing the relative harms, a greater harm would result if the injunction were denied. The court credited Water District's showing, concluding that it had "established ongoing, significant, and intangible organizational harms" supporting its request for injunctive relief. And it rejected one of Eisenberg's asserted harms, namely, that "she should have or need[ed] access to the full Confidential Reports"; the court concluded that "being deprived of the products of self-help discovery is not a harm the court is inclined to credit in the balancing of harms …" Moreover, to the extent that Eisenberg claimed that harm to her would result from granting injunctive relief because of the potential disclosure of her confidential and privileged notations on

---

[18] Callender, stated in his declaration in support of the motion that he had spoken "with dozens of employees . . . express[ing] fear, trepidation, anxiety, and concern about information concerning their cooperation in the investigations underlying the Confidential Reports being in the hands of Director Eisenberg. Her taking and keeping the [R]eport[s] has had a chilling effect of people wanting to participate in investigations due to the fear that their name[s] may be publicized and that Director Eisenberg will retaliate on social media and in the Board room. Her willingness to do so has been evidenced by her social media posts and by her public, unwarranted, and untrue criticism of those who participated in the investigation and now have had their names exposed." Callender also stated: "This environment of fear likewise undermines the [Water District] values that the Board Code is meant to reinforce. Those values, which are explicitly articulated in the Board Code, include 'striv[ing] to support a work culture and workplace environment that attracts and retains superior employees empowered to make decisions about, and take responsibility for, how they do their job.' "

the Reports, the trial court specifically addressed it in its order: The court permitted Eisenberg, before transfer, to redact her handwritten notations, and it ordered that Water District's counsel "must not review, copy, or take notes [relative to] any handwritten notes made by Eisenberg."

The trial court did not abuse its discretion in its evaluation of the relative harms to the parties in granting or denying the preliminary injunction.[19]

### 4. *Conclusion Regarding Water District's Showing*

The trial court did not abuse its discretion in its evaluation of the two relevant issues: (1) whether Water District was likely to prevail on the merits; and (2) the relative interim harm Water District and Eisenberg, respectively, would sustain from the grant or denial of injunctive relief. (See *Dodge, Warren*, *supra*, 105 Cal.App.4th at p. 1420.) In reviewing the trial court's conclusions regarding these two issues, we are mindful that we are considering a mandatory preliminary injunction that is subject to heightened appellate scrutiny. (See *McMahon*, 219 Cal.App.3d at p. 295.) We conclude nonetheless that there was no error. (See *Ryland Mews*, *supra*, 234 Cal.App.4th at p. 712, fn. 4 [although " 'courts are perhaps more reluctant to interpose the mandatory [injunction] … in a

---

[19] As we have noted (see pt. II.E.1., *ante*), Eisenberg contends that the trial court failed to consider her affirmative defense and supporting evidence concerning Water District's alleged violation of the Brown Act. She also argues that the trial court failed to consider Water District's alleged "retaliatory actions" and "bad faith tactics" that should have resulted in the denial of injunctive relief pursuant to unclean hands defense. The trial court specifically considered Eisenberg's Brown Act argument at the hearing. (See fn. 13, *ante*.) Moreover, we conclude that the court did not abuse its discretion by making implied findings in rejecting both affirmative defenses in its order. (See *VRT Corp.*, *supra*, 63 Cal.App.4th at p. 1403; see also *California Satellite Systems, Inc. v. Nichols* (1985) 170 Cal.App.3d 56, 70 [application of unclean hands defense "is primarily a question of fact and, in the context of a preliminary injunction, within the discretion of the trial court"; the defense "applies only if the inequitable conduct occurred in a transaction directly related to the matter before the court and affects the equitable relationship between the litigants"].)

proper case it is never denied' "].)  The trial court was within its discretion in issuing injunctive relief that would effectuate "the return to the status quo existing at the time the documents were taken." (*Pillsbury, supra*, 55 Cal.App.4th at p. 1289.)[20]

### III.    DISPOSITION

The order of January 15, 2015, granting mandatory preliminary injunction in favor of respondent Santa Clara Valley Water District is affirmed.  Respondent shall recover its costs on appeal.

---

[20] We observe that, even were we to conclude that the evidence did not demonstrate that the balance of harms favored injunctive relief—a conclusion we do *not* make here—the trial court did not abuse its discretion after evaluating the interrelated "potential-merit and interim-harm factors [in which the court may conclude that] the greater the plaintiff's showing on one, the less must be shown on the other to support an injunction." (*Butt, supra*, 4 Cal.4th at p. 678.)  The record shows that Water District made a strong showing of the likelihood it would prevail on its conversion claim.  (See *Right Site Coalition v. Los Angeles Unified School Dist.* (2008) 160 Cal.App.4th 336, 338–339 ["[t]he more likely it is that plaintiff[] will ultimately prevail, the less severe must be the harm that [it] allege[s] will occur if the injunction does not issue"].)

_____
WILSON, J.

WE CONCUR:


_____
GROVER, Acting P. J.


_____
KULKARNI, J.*


***Santa Clara Valley Water District v. Eisenberg***
**H052913**

---

\* Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6 of the California Constitution

**COUNSEL LISTINGS:**

Trial Court:        Santa Clara County Superior Court

Trial Judge:        The Honorable Helen E. Williams

Counsel:        Constance Jiun- Yee Yu, Phillip J. Wang, Ellen Peitse Liu, Putterman, Yu, Wang LLP for Defendant and Appellant: *Santa Clara Valley Water District*

                    Alexander Douglas Westerfield, Paolo A. Hermoso, Nossaman LLP for Plaintiff and Respondent: *Eisenberg*

**Santa Clara Valley Water District v. Eisenberg**
**H052913**